## HILLIKER *v.* FARR.

1. INTOXICATING LIQUORS — CIVIL DAMAGE LAW — LIABILITY OF FURNISHER.
    In an action under the civil damage law (section 5398, 2 Comp. Laws), against a saloon keeper and his bondsmen, the question whether the saloon keeper received pay for liquor shown to have been furnished in his saloon is immaterial.

2. SAME — SALE OF SALOON — LIABILITY OF SELLER'S BONDSMEN.
    Where a saloon keeper sold his saloon and gave the buyer a power of attorney authorizing him to conduct the saloon business as the seller's agent, such authority being a mere pretense to enable the buyer to carry on the business unlawfully under the seller's license, the seller's bondsmen are not liable under the civil damage act for unlawful sales made by the buyer.

3. SAME—COLORABLE SALE.

Where a person making an unlawful sale of liquor in a saloon
was a bona fide agent of the owner of the saloon, and a sale
of the business to the agent was a mere pretense to relieve
the owner's bondsmen from responsibility, such bondsmen
are none the less liable.

4. SAME—EVIDENCE—CHARACTER OF TRANSACTION.

In an action against a saloon keeper and his bondsmen for an
unlawful sale made by one to whom it is claimed the saloon
was sold and a power of attorney given to facilitate conduct-
ing the business under the seller's license, evidence tending
to show that the transaction was a bona fide sale and not the
creation of an agency is admissible, though it tends to contra-
dict the power of attorney.

5. WITNESSES—SELF CRIMINATION—EFFECT.

Where, in an action against a saloon keeper and his bondsmen
for an unlawful sale made by one to whom it is claimed the
saloon was sold and a power of attorney given as a mere sham
to facilitate conducting the business under the seller's license,
the court ordered the alleged buyer to produce the power of
attorney, a claim that he was thereby compelled to incrim-
inate himself is untenable, as the only bearing the power of
attorney would have in case he were informed against for
running a saloon without a license would be to furnish evi-
dence of his innocence.

6. INTOXICATING LIQUORS — CIVIL DAMAGE LAW—ACTION — EVI-
DENCE—OTHER UNLAWFUL SALES.

In an action against a saloon keeper and his bondsmen under
the civil damage law for an unlawful sale of liquors, it is error
to allow proof by plaintiff of other unlawful sales to other
persons on the day in question.

7. SAME—ARGUMENT OF COUNSEL—PREJUDICE.

A remark by counsel in argument that "he had been in the
practice of law for a good many years and this is the first
case he ever knew where counsel for liquor dealers ask the
jury to go by the evidence," is improper and prejudicial.

8. SAME—DAMAGES—EVIDENCE.

A mother suing under the civil damage law for the death of
her son is not entitled to show that her husband paid the doc-
tor's bills and funeral expenses of decedent occasioned by his
injury.

Error to Osceola; Rose, J.   Submitted June 10, 1907.
(Docket No. 62.)   Decided September 20, 1907.

Case by Marie Hilliker against Ray A. Farr, principal, and Reuben B. Farr and Olof Ingstrom, sureties, and James E. Denoyer, principal, and Clause Freese and Albert Miller, sureties, and Fred Noack, under the civil damage act. There was judgment for plaintiff against defendants Freese, Miller, and Noack, and they bring error. Reversed.

*Stephen H. Clink* and *B. Newton Savidge*, for appellants.

*Charles A. Withey*, for appellee.

CARPENTER, J. Harland Hilliker, plaintiff's son, died from injuries received in a drunken brawl. Plaintiff, who was being supported by wages earned by her son, brings this suit to recover damages, claiming that his death resulted from liquor furnished him by defendant Noack, who kept a saloon in Dighton, Osceola county, and Ray A. Farr, who kept a saloon in Tustin, Osceola county. She contends that Noack was operating the saloon as the agent of defendant James E. Denoyer, and she, therefore, joined as defendants said Denoyer and the sureties on his bonds, defendants Freese and Miller. She also joined as defendants Reuben B. Farr and Olof Ingstrom, who were the sureties on the bond of defendant Farr. Denoyer was absent from the State; was not served with process and did not appear, and, therefore, is not concerned in the result of this suit. A verdict and judgment were rendered in favor of Farr and his sureties and against Noack and the sureties on the bond of Denoyer. These last-named defendants appeal to this court and ask a reversal of the judgment for several reasons:

*First.* Witnesses for plaintiff testified that Noack carried in an adjoining pool room, where Hilliker and his companions were playing pool, a tray of liquor, and that Hilliker drank a portion of this liquor. It is now contended that Noack is not responsible for the consequences, because the testimony does not show that he received pay for said

liquor. We think the jury might have drawn the inference that Noack furnished the liquor under a promise or expectation of being paid therefor, and even though he did not, he would be liable. The statute creating the plaintiff's right of action (section 5398, 2 Comp. Laws) reads:

"Every * * * parent * * * who shall be injured in * * * means of support * * * by reason of the selling, giving or furnishing any spirituous, intoxicating, fermented or malt liquors, to any person, shall have a right of action in his or her own name against any person or persons who shall, by selling or giving any intoxicating or malt liquor, have caused or contributed to the intoxication of such person or persons, or who have caused or contributed to such injury."

*People* v. *Bird*, 138 Mich. 31 (67 L. R. A. 424), relied upon by defendant's counsel, has obviously no application. That was a criminal case based upon facts very different from those in the case at bar, and it involved the construction of an entirely different section of the statute.

*Second.* Defendant Noack was made a witness by the plaintiff. He testified that he bought the saloon and its contents from Denoyer, the former proprietor; that he received from Denoyer a power of attorney authorizing him to conduct the saloon business as Denoyer's agent; that he used the red card (the tax receipt) of Denoyer and purchased goods in Denoyer's name. There was no evidence tending to show that the sureties on Denoyer's bond had any knowledge of the transaction between their principal and Noack. Appellants contend that this testimony did not warrant the trial court in submitting to the jury the question of the liability of Denoyer's sureties. Appellee contends that it justified the trial court in directing a verdict against said sureties. We differ from both of them. We deny each of the above contentions. From the above testimony the jury were warranted in reaching either of the two following opposed conclusions: *First*, that there was an actual sale by Denoyer to Noack, and that author-

ity to act as his agent was a mere pretense to enable the latter to carry on his business unlawfully under the license of the former; or, *second*, that Noack was a bona fide agent of Denoyer and that no sale was made, or if made, it was a mere pretense to relieve Denoyer's sureties from responsibility. It is clear that if the jury reached the second conclusion, Denoyer's sureties were responsible. It is equally clear that if they reached the first conclusion, they were not responsible, and the verdict should have been in their favor. This is settled by *Mathews* v. *Garman*, 110 Mich. 559. It is true that *Mathews* v. *Garman* differs from the case at bar in this particular, viz., there the vendor did not authorize his vendee to carry on the business as his agent. Whoever insists that this difference is material must contend that a principal has unlimited power to extend the obligations of his sureties. He has no such power.

In his charge to the jury, the trial judge fully recognized these principles, but he disregarded them in certain rulings when testimony was being introduced. For instance, on the cross-examination of Noack, he declined to permit defendant's counsel to obtain answers to the following questions, viz.:

" Were you in fact a true agent of Mr. Denoyer after August 2d, 1904 (August 2d, 1904, was the date of the alleged sale)?
" What did you do with the proceeds of that saloon after the second day of August, 1904 ?"

These rulings were erroneous. It must be assumed that they prevented defendants from introducing testimony tending to prove that the transaction between Noack and Denoyer was a sale and not the creation of an agency. In reaching the above conclusion, we deny the proposition asserted by plaintiff's counsel, viz., that the proposed testimony was inadmissible because it tended to contradict the power of attorney heretofore mentioned. Denoyer's sureties clearly had a right to prove, if they could, that the power of attorney was a mere sham. In

this connection we notice the claim of appellant that the court erred in not permitting one Cole to testify "to what was said by the parties" at the time he (Cole) loaned Noack $25 to pay Denoyer on this deal. We cannot say from the record that Denoyer was a party to this conversation. For the purpose of a new trial which must take place, we think it proper to say that if he was, the excluded testimony was admissible.

*Third.* It is contended that Noack was compelled to incriminate himself when by the order of the trial court he produced the power of attorney heretofore referred to. The ground upon which it is contended that this document incriminated Noack is stated in the brief of defendants' counsel as follows:

"Suppose Noack had been immediately thereafter complained of for running that saloon without a license. Would not this power of attorney have an important bearing upon the trial of that cause?"

We answer that in such a case its only bearing would be to furnish evidence of Noack's innocence. It would have no tendency whatever to prove his guilt. Indeed, he is guilty only upon the assumption that the power of attorney is a mere sham. We think there was no error in the ruling under consideration.

*Fourth.* Complaint is made because the trial court permitted plaintiff to prove that Noack made an unlawful sale of liquor to a third person on the same day that it is alleged he furnished liquor to Hilliker and his companions. We think this complaint is well founded. This testimony had no legitimate bearing on any issue involved in the case. Its only tendency was to create a predjudice in favor of plaintiff. It cannot be said that if this testimony had been excluded the jury would have rendered a verdict in plaintiff's favor. In this connection it is proper to notice a remark made by plaintiff's counsel in his argument to the jury, viz., he said that "he had been in the practice of law for a good many years and this is

the first case he ever knew where counsel for liquor deal-
ers ask the jury to go by the evidence." It is scarcely
necessary to say that this remark was improper and prej-
udicial. It should not have been made.

*Fifth.* Plaintiff was allowed to prove that her husband
paid the bills (the doctor bills and funeral expenses) oc-
casioned by her son's injury and death. While it is
doubtful if defendants were harmed by the admission of
this testimony, it would have been proper to exclude it.
It had no bearing on any issue in the case.

Other complaints are made. They have received our
careful consideration. Some of them are determined by
the reasoning of this opinion. Most of them are entirely
lacking in merit. None of them raise important ques-
tions, nor questions likely to arise upon a new trial. They
are, therefore, not discussed.

The judgment is reversed, and a new trial ordered.

MCALVAY, C. J., and GRANT, HOOKER, and MOORE,
JJ. concurred.