[Crim. No. 19058. May 27, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
EUGENE BRADFORD, Defendant and Appellant.

**COUNSEL**

Richard E. Erwin, Public Defender, Kenneth Cleaver, Assistant Public Defender, and Kenneth R. Yegan, Deputy Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Frederick R. Millar, Jr., Theodora Berger and Steven H. Kaufmann, Deputy Attorneys General, for Plaintiff and Respondent.

D. Lowell Jensen, District Attorney (Alameda), and Thomas W. Condit, Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

## Opinion

**CLARK, J.**—Defendant appeals from judgment entered on jury verdicts convicting him of assault with a deadly weapon upon a peace officer (Pen. Code, § 245, subd. (b)) by using a firearm (Pen. Code, § 12022.5), exhibiting a firearm (Pen. Code, § 417), and possession of a concealable firearm by an ex-felon (Pen. Code, § 12021). The judgment is affirmed, but modified.

Defendant and an accomplice robbed a bank in Ventura County. Minutes later, while still in Ventura County, they were stopped for speeding by Highway Patrol Officer Reynolds Patrick. Defendant, the driver, got out. As he and Patrick stepped to the side of the patrol car, defendant wrested the officer's revolver from him; Patrick tried to escape, but accidentally was struck by and pinned under a car driven by Alma Reinke. Defendant fired five shots at Patrick and Mrs. Reinke, then drove away. Patrick freed himself, radioed for assistance, and set off in pursuit.

The chase ended in Los Angeles County where defendant was involved in a traffic accident. During the chase, defendant's accomplice fired several shots at Officers Edward Douglas and Samuel Olmstead of the Los Angeles County Sheriff's Department when they attempted to intercept the robbers at a point on Pacific Coast Highway within Los Angeles County.

Defendant was prosecuted and convicted in federal court of bank robbery, in Los Angeles County of two counts of assault with a deadly weapon upon a peace officer (Officers Douglas and Olmstead), and in Ventura County of assault with a deadly weapon upon a peace officer (Officer Patrick) by using a firearm, exhibiting a firearm (Mrs. Reinke), and possession of a concealable firearm by an ex-felon. This appeal is from the Ventura County judgment.

*Multiple Prosecution*

Defendant contends that the separate proceedings in Los Angeles and Ventura Counties constituted multiple prosecutions in violation of section 654 of the Penal Code as construed in *Kellett* v. *Superior Court* (1966) 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206].

Section 654 provides in pertinent part: "An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

In *Neal v. State of California* (1960) 55 Cal.2d 11, 21 [9 Cal.Rptr. 607, 357 P.2d 839], this court pointed out that "Section 654's preclusion of multiple prosecution is separate and distinct from its preclusion of multiple punishment. The rule against multiple prosecutions is a procedural safeguard against harassment and is not necessarily related to the punishment to be imposed; double prosecution may be precluded even when double punishment is permissible."

The distinction drawn in *Neal* was sharpened in *Kellett v. Superior Court, supra*. "If needless harassment and the waste of public funds are to be avoided, some acts that are divisible for the purpose of punishment must be regarded as being too interrelated to permit their being prosecuted successively. When there is a course of conduct involving several physical acts, the actor's intent or objective and the number of victims involved, which are crucial in determining the permissible punishment, may be immaterial when successive prosecutions are attempted. When, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding *unless joinder is prohibited* or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (63 Cal.2d at p. 827, italics added.)

The People contend that joinder of the Los Angeles and Ventura County prosecutions was prohibited under section 777 of the Penal Code. Section 777 provides in pertinent part: "[E]xcept as otherwise provided by law the jurisdiction of every public offense is in any competent court within the jurisdictional territory of which it is committed." As applied to felonies triable in the superior court, the "jurisdictional territory" is the county, and the county in which the crime was committed is the proper venue, except where some other statute provides an alternative venue. (Witkin, Cal. Criminal Procedure, p. 66.)

In the circumstances of this case, defendant responds, section 783 of the Penal Code provided an alternative venue in Los Angeles County for the offenses otherwise triable in Ventura County. Section 783 provides in pertinent part: "When a public offense is committed . . . on a . . . motor vehicle . . . prosecuting its trip, the jurisdiction [of such offense] is in any competent court, through . . . the jurisdictional territory of which the . . . motor vehicle . . . passes in the course of its . . . trip, or in the jurisdictional territory of which the . . . trip terminates."

The question presented, therefore, is whether the offenses involved in this appeal can be said to have occurred "on a . . . motor vehicle" within the meaning of section 783. ▆▆ Arguing that the sole purpose of such venue statutes is to eliminate the uncertainty that would otherwise exist if an offense committed inside a rapidly moving vehicle had to be prosecuted in the county in which it occurred, the People contend section 783 is inapplicable where, as here, the vehicle was stopped and the offenses were committed outside the vehicle at an identifiable spot along the highway. The People are correct.

Our venue statutes must be construed in light of the importance historically attached to *vicinage.* At common law, a defendant in a criminal action had a right to be tried by a jury drawn from the vicinage, i.e., the neighborhood, in which the alleged crime occurred. (*People* v. *Powell* (1891) 87 Cal. 348, 354-355 [25 P. 481].) The substance of this common law right is preserved in the federal Constitution, the Sixth and Fourteenth Amendments guaranteeing a defendant in a state criminal prosecution a right to be tried by a jury drawn from, and comprising a representative cross-section of, the residents of the judicial district in which the crime was committed. (*People* v. *Jones* (1973) 9 Cal.3d 546, 556 [108 Cal.Rptr. 345, 510 P.2d 705].) It is also reflected in section 777's provision that, except as otherwise provided by law, a criminal offense is to be tried in the judicial district in which it occurred.

The right of a criminal defendant to be tried in the vicinage of the crime was interpreted so strictly at common law that, e.g., an offense committed partly in one county and partly in another was not prosecutable at all. (*People* v. *Powell, supra,* 87 Cal. at p. 358.) Section 781 of the Penal Code, providing that an offense committed partly in one jurisdiction and partly in another may be prosecuted in either, "was intended to broaden criminal jurisdiction beyond the rigid limits fixed by the common law. . . ." (*People* v. *Powell* (1967) 67 Cal.2d 32, 63 [59 Cal.Rptr.

817, 429 P.2d 137].) The same purpose underlies "in-transit" statutes such as section 783, namely, to assure that venue will lie somewhere when the exact site of an offense cannot be ascertained because it was committed in a moving vehicle.

Persuasive authority from other jurisdictions not only identifies the limited purpose of in-transit venue statutes, but also establishes that, because the purpose is limited, such statutes are inapplicable when the offense occurs outside the vehicle at an identifiable location.

In *Commonwealth* v. *Stefanowicz* (1938) 133 Pa.Super. 501 [3 A.2d 22], a defendant convicted of statutory rape contended that Pennsylvania's in-transit statute was inapplicable in the circumstances of his case. Rejecting his claim, the court identified the purpose of the statute: "In the instant case there was evidence that the crime was committed in the automobile which had been driven from the City of Pittsburgh, in Allegheny County, to a place within or without that county, where the crime was committed, and then the return journey made. The difficulty of proof of the exact locus of the crime is obvious. The very purpose of the act . . . was to obviate the difficulties of proof which confronted the Commonwealth in the present case." (*Id.*, at p. 505.)

Defendant seeks support for his position in *Stefanowicz,* noting that the in-transit statute was held applicable even though the crime occurred while the car was stopped. However, as the court pointed out: "It is too obvious for discussion that [the statute] does not require that offenses committed during journeys from place to place must be committed on the carriage or vehicle only when such is in motion. A journey is not always consummated by uninterrupted movement. If it were necessary to determine the exact place of temporary halts during journeys in the nighttime the difficulty of proof would not be obviated and the purpose contemplated by the act would be nullified." (*Id.*, at p. 504.)

By contrast, where, as here, the offense took place outside an automobile at an identifiable place, the Pennsylvania in-transit statute was held inapplicable. In *Commonwealth* v. *Tarsnane* (1952) 170 Pa.Super. 265 [85 A.2d 606], the defendant enticed a child into his car in Philadelphia County, drove to a vacant house the location of which was not proven, entered the house and assaulted the child, then returned to the same neighborhood. Reversing the Philadelphia County conviction because venue in that county was not proven, the court held the in-transit statute inapplicable. "The offense here was not committed in

the automobile either while in motion or when brought to a stop, in the course of a journey, as in Com. v. Stefanowicz . . . . The place where the instant crime was committed was in a fixed building susceptible of exact location." (*Id.,* at p. 268.)

In *Watt* v. *People* (1888) 126 Ill. 9 [18 N.E. 340], a murder was committed on a moving train under circumstances making it impossible to determine whether the offense occurred in Will County or in adjoining Grundy County. Jurisdiction in Grundy County was upheld under the Illinois in-transit statute. "Whenever the *locus in quo* of the offense can be precisely identified, under [the general venue statute], the trial should of course be had in the county where it was committed, but when such is not the case [the in-transit statute] must be applied or the offender cannot be tried at all. When it cannot be determined in which of two or more counties the criminal act was perpetrated, the offender must, *ex necessitate,* be tried in a county which cannot be proved beyond a reasonable doubt to be the actual *visne* of the crime. If he cannot be so tried the law is powerless to punish him." (*Id.,* at p. 17.)

In *People* v. *Goodwin* (1914) 263 Ill. 99 [104 N.E. 1018], recognizing the limited purpose of in-transit statutes, the court refused to apply the Illinois statute where, as here, the location of the offense was not only identifiable, but identified. The defendant, a brakeman, confessed to burglarizing a freight train as it passed through Cook County enroute to Peoria County. The Peoria County conviction was reversed on the ground that venue in that county was not proven. "Under the reasoning of this court in *Watt* v. *People, supra,* it must be held that when the place of the crime can be definitely ascertained the venue of the crime should be laid and the indictment brought in that county." (*Id.,* at pp. 103-104.)

Relying on state constitutional provisions requiring trial in the county where the offense occurred, some courts have invalidated in-transit statutes insofar as they authorize prosecution of an offense in a county other than the one in which the crime was actually committed. (See *State* v. *Reese* (1920) 112 Wash. 507 [192 P. 934, 11 A.L.R. 1018]; *People* v. *Brock* (1907) 149 Mich. 464 [112 N.W. 1116]; *State* v. *Anderson* (1905) 191 Mo. 134 [90 S.W. 95].) ▮ In light of the federal constitutional right to a trial by a jury drawn from the vicinage in which the crime occurred, section 783 must be held inapplicable where, as here, the location of the crime is readily identifiable.

*Instructions*

Defendant contends that the trial court erred in failing to instruct the jury *sua sponte* on when a peace officer is "engaged in the performance of his duties" within the meaning of section 245, subdivision (b), of the Penal Code. (See CALJIC No. 9.52 et seq.) The short answer to this contention is that, assuming *arguendo* that failure to give such instructions was error, it is not reasonably probable that a result more favorable to defendant would have been reached in the absence of the error; the evidence is uncontradicted that Officer Patrick was engaged in the performance of his duties when he stopped defendant for speeding. (See Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

*Preindictment Delay*

Defendant contends that he was denied his right to a speedy trial because of preindictment delay.

In *United States* v. *Marion* (1971) 404 U.S. 307 [30 L.Ed.2d 468, 92 S.Ct. 455], the high court held that "the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused,' " explaining that the accusation may be "a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." (*Id.,* at pp. 313, 320 [30 L.Ed.2d at pp. 474, 479].) A delay prior to accusation is governed by due process principles. (*Id.,* at p. 324 [30 L.Ed.2d at pp. 480-481].)

■ The "established rule" in California is that a person does not become an "accused" until charges are formally filed. (*Jones* v. *Superior Court* (1970) 3 Cal.3d 734, 739 [91 Cal.Rptr. 578, 478 P.2d 10]; see *People* v. *Archerd* (1970) 3 Cal.3d 615, 639 [91 Cal.Rptr. 397, 477 P.2d 421]; *People* v. *Jordan* (1955) 45 Cal.2d 697, 708 [290 P.2d 484].) However, in *Jones* v. *Superior Court, supra,* the question was raised whether "a person becomes an 'accused' at an earlier time, when, for example, law enforcement agencies either decide to charge him with an offense or have a reasonable basis for doing so." This court found it unnecessary to resolve the question because the prearrest delay complained of occurred after the filing of a formal charge. (3 Cal.3d at p. 739.) Moreover, this court observed, the same approach would be taken whether the claim was characterized as a speedy trial or a due process issue, "namely, balancing the effect of the delay on the defendant against any justification for the delay." (*Id.,* at p. 741, fn. 1.)

■ The preindictment delay in this case was justified by the necessity of awaiting termination of the federal and Los Angeles proceedings;[1] defendant suffered no cognizable prejudice because of it.[2] Therefore, whether characterized as a speedy trial or a due process claim, defendant's contention lacks merit.

*Consecutive Sentencing*

In the Los Angeles proceeding, defendant's sentences on the two counts of assault with a deadly weapon upon a peace officer were ordered to run consecutively to one another. Aggravated by a prior conviction, the sentence on each count was 5 years to life imprisonment, the aggregate sentence being 10 years to life imprisonment.

In this proceeding, defendant's sentences on the three counts were ordered to run concurrently with one another but consecutively to sentences imposed in previous proceedings. Being aggravated both by a prior conviction and by operation of section 12022.5,[3] defendant's sentence on this count of assault with a deadly weapon upon a peace officer is 10 years to life imprisonment, the most severe penalty provided by law for the 3 crimes of which he was convicted in this proceeding.[4] This sentence, being consecutive to the Los Angeles sentences, increased defendant's aggregate minimum sentence to 20 years.

---

[1]Defendant was arrested by Los Angeles County authorities the day of the offenses, 21 December 1973. He was indicted on the federal bank robbery charge on 14 January 1974; the federal proceeding concluded on 15 April 1974. An amended information was filed in the Los Angeles proceeding on 23 April 1974; that proceeding concluded on 22 August 1974. The indictment in the present proceeding was filed on 30 September 1974.

[2]Defendant concedes that "the record reveals no prejudice in any traditional sense, i.e., loss of a defense witness, missing evidence, or fading memories." That defendant was rendered indigent by the expense of defending the federal and Los Angeles proceedings, and, therefore, deprived of the means to retain private counsel in this proceeding, was a function of the order in which the proceedings occurred, not of any delay in bringing this proceeding.

[3]Section 12022.5 provides in pertinent part: "Any person who uses a firearm in the commission or attempted commission of . . . assault with a deadly weapon . . . upon conviction of such crime, shall, in addition to the punishment prescribed for the crime of which he has been convicted, be punished by imprisonment in the state prison for a period of not less than five years. Such additional period of imprisonment shall commence upon expiration or other termination of the sentence imposed for the crime of which he is convicted and shall not run concurrently with such sentence."

[4]The state prison sentence provided by law for violation of section 12021 is not more than 15 years; the penalty provided by law for violation of section 417 is not more than 6 months imprisonment in county jail, or a fine of not more than $500, or both (Pen. Code, § 19).

Defendant contends that the court abused its discretion by ordering the sentences imposed in this proceeding to run consecutively to sentences imposed in previous proceedings.

It is well established that a trial court has discretion to determine whether several sentences are to run concurrently or consecutively. (Pen. Code, § 669; *In re Sandel* (1966) 64 Cal.2d 412, 416 [50 Cal.Rptr. 462, 412 P.2d 806].) In the absence of a clear showing of abuse, the trial court's discretion in this respect is not to be disturbed on appeal. (*People* v. *Giminez* (1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65].) Discretion is abused when the court exceeds the bounds of reason, all of the circumstances being considered. (*People* v. *Giminez, supra*; *People* v. *Russel* (1968) 69 Cal.2d 187, 194 [70 Cal.Rptr. 210, 443 P.2d 794].)

Defendant's assault upon Officer Patrick was a particularly aggravated offense of its sort. Whereas merely pointing the loaded revolver at the officer would have constituted the offense (*People* v. *Laya* (1954) 123 Cal.App.2d 7, 16 [266 P.2d 157]; *People* v. *Thompson* (1949) 93 Cal.App.2d 780 [209 P.2d 819]), defendant fired five shots at him while he was pinned under a car. But for defendant's faulty marksmanship, we might be reviewing a first degree murder conviction. Accordingly, we cannot say that the trial court abused its sentencing discretion, nor can we say that the sentence constituted cruel or unusual punishment. (See *People* v. *White* (1976) 16 Cal.3d 791, 797 [129 Cal.Rptr. 769, 549 P.2d 537].)

Defendant further contends that he was denied equal protection of the law because, his offenses in Los Angeles and Ventura Counties having been tried in separate proceedings, he was deprived of the benefits of section 3024, subdivision (d), of the Penal Code.

The equal protection clauses of the United States and California Constitutions (U. S. Const., 14th Amend.: Cal. Const., art. I, § 7) prohibit the state from arbitrarily discriminating among persons subject to its jurisdiction, and require that classifications between those to whom the state accords and witholds substantial benefits must be reasonably related to a legitimate public purpose. (*Hayes* v. *Superior Court* (1971) 6 Cal.3d 216, 223 [98 Cal.Rptr. 449, 490 P.2d 1137]; *In re Gary W.* (1971) 5 Cal.3d 296, 303 [96 Cal.Rptr. 1, 486 P.2d 1201]; *In re King* (1970) 3 Cal.3d 226, 232 [90 Cal.Rptr. 15, 474 P.2d 983].)

Section 3024 provides in pertinent part: "The following shall be the minimum term of sentence and imprisonment in certain cases, notwith-

standing any other provisions of this code . . . . (d) For a person convicted *at one trial* of more than one felony, and upon whom are imposed cumulative or consecutive sentences the aggregate of the minimum terms of which exceed 10 years, 10 years." (Italics added.)

The purpose of section 3024, subdivision (d), is "to place an upper limit on the aggregate minimum terms of persons convicted of more than one felony. The statute thereby furthers the goal, fundamental to the Indeterminate Sentence Law, of vesting in the Adult Authority the discretion to set discharge and parole dates in accordance with the merits of each prisoner's case. The statute further promotes uniformity of incarceration for defendants in like circumstances who would otherwise be subject to the varying standards of individual judges. A distinction between defendants convicted of multiple offenses at several trials, in which the offenses could have been joined, and defendants convicted of multiple offenses at a single trial does not reasonably relate to this purpose." (*People* v. *White* (1976) 16 Cal.3d 791, 801 [129 Cal.Rptr. 769 549 P.2d 537] (Tobriner, J., dissenting).) Nor is a distinction between defendants convicted of multiple offenses at several trials, in which the offenses could have been joined *but for section 777,* and defendants convicted of multiple offenses at a single trial reasonably related to the purpose of section 3024, subdivision (d).

"A statutory classification which arbitrarily excludes some but not all of those similarly situated in relation to the legitimate purposes of the statute does not necessarily invalidate the entire statute. In light of the purposes and history of a particular statute or an overall statutory scheme a reviewing court may correct a discriminatory classification by invalidating the invidious exemption and thus extending statutory benefits to those whom the Legislature unconstitutionally excluded." (*Hayes* v. *Superior Court, supra,* 6 Cal.3d at p. 224, citations omitted.)

Applying this standard, rather than invalidate section 3024, subdivision (d), we extend its benefits to defendants convicted of multiple offenses at separate trials, if such offenses could have been joined or, as in this case, could have been joined but for section 777.

Contrary to defendant's contention, the additional punishment prescribed by section 12022.5 is not to be included in computing the aggregate minimum term under section 3024, subdivision (d). (*People* v. *White, supra,* 16 Cal.3d 791, 795.) Therefore, defendant's aggregate minimum term is 15 years.

*Multiple Punishment*

◼ Defendant contends that imposition of sentence upon both the assault with a deadly weapon upon a peace officer count (count III) and the possession of a concealable firearm by an ex-felon count (count VI) violated section 654 of the Penal Code. As the People expressly concede, this contention has merit.

Section 654 provides in pertinent part: "An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ."

"The 'act' necessary to invoke section 654 need not be an act in the ordinary sense that it is a separate, identifiable, physical incident, but may be 'a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute within the meaning of section 654. The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one.' " (*In re Adams* (1975) 14 Cal.3d 629, 634 [122 Cal.Rptr. 73, 536 P.2d 473], quoting *People* v. *Bauer* (1969) 1 Cal.3d 368, 376 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1389].)

The standard for applying section 654 in the circumstances of this case was restated in *People* v. *Venegas* (1970) 10 Cal.App.3d 814 [89 Cal.Rptr. 103]. "Whether a violation of section 12021, forbidding persons convicted of felonies from possessing firearms concealable upon the person, constitutes a divisible transaction from the offense in which he employs the weapon depends upon the facts and evidence of each individual case. Thus where the evidence shows a possession distinctly antecedent and separate from the primary offense, punishment on both crimes has been approved. On the other hand, where the evidence shows a possession only in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held to be improper where it is the lesser offense." (*Id.,* at p. 821, citations omitted.)

Defendant's possession of Officer Patrick's revolver was not "antecedent and separate" from his use of the revolver in assaulting the officer. The punishment provided for violation of section 12021 is the lesser punishment for the two crimes. (See fn. 4, *ante.*) Therefore, its execution

must be stayed. (*People* v. *Beamon* (1973) 8 Cal.3d 625, 640 [105 Cal.Rptr. 681, 504 P.2d 905]; see *In re Wright* (1967) 65 Cal.2d 650, 656 [56 Cal.Rptr. 110, 422 P.2d 998]; *People* v. *McFarland* (1962) 58 Cal.2d 748, 763 [26 Cal.Rptr. 473, 376 P.2d 449].)

The judgment is modified by adding the italicized language to the following two sentences: (1) "The court orders that as to Count VI, being a felon in possession of a firearm, violation of section 12021 of the Penal Code, the defendant is sentenced to the State Prison of the State of California for the term prescribed by law, *provided, however, that execution of sentence for Count VI be stayed pending the finality of this judgment and service of sentence as to Count III, such stay to become permanent when service of sentence as to Count III is completed.*" (See *People* v. *Beamon, supra,* 8 Cal.3d at p. 640; *In re Wright, supra,* 65 Cal.2d at pp. 655-656, fn. 4.) (2) "By order of the court, the sentences herein imposed shall run concurrently with each other and consecutively with any other sentence the defendant may be obligated to serve as a result of any prior convictions, *provided, however, that the aggregate minimum term for the sentences imposed in this case and in Los Angeles County Superior Court No. A070213 is 15 years.*"

As so modified the judgment is affirmed.

McComb, J., Mosk, J., Sullivan, J., and Richardson, J., concurred.

**TOBRINER, J.,** Concurring and Dissenting.—I concur in the majority opinion except insofar as it holds that the provisions of Penal Code section 3024, subdivision (d) are not applicable to a term of imprisonment imposed under Penal Code section 12022.5. For the reasons set forth in my dissenting opinion in *People* v. *White* (1976) 16 Cal.3d 791 [129 Cal.Rptr. 769, 549 P.2d 537], I believe that section 3024, subdivision (d) limits defendant's aggregate minimum term to 10 years and that after such minimum term is served, the Adult Authority is authorized to release defendant from custody when in its judgment defendant is ready for such release.

Wright, C. J., concurred.

Appellant's petition for a rehearing was denied June 24, 1976. Wright, C. J., and Tobriner, J., were of the opinion that the petition should be granted.