Filed 8/7/15  P. v. Barbarin CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICARDO ESTRADA BARBARIN,<br><br>    Defendant and Appellant. | E061433<br><br>(Super.Ct.No. RIF145530)<br><br>O P I N I O N |

APPEAL from the Superior Court of Riverside County.  Michele D. Levine, Judge.  Affirmed.

Sharon G. Wrubel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Peter Quon, Jr., Susan Miller, and Raquel M. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

## I.  INTRODUCTION

This is the second appeal in this case by defendant Ricardo Estrada Barbarin.  In the first appeal, we affirmed defendant's convictions for the special circumstance murder of 13-year-old Anthony Sweat (Sweat) (count 1) and the premeditated attempted murders of four others, Christopher S. (Christopher), Elliot Woods (Elliot), Taren Anderson (Taren), and Tywan Woods (Tywan) (counts 2, 3, 4 & 5).  (*People v. Barbarin* (Feb. 7, 2014, E055565 [nonpub. opn.] (*Barbarin I*).)  The crimes occurred during a July 14, 2002, gang-related shooting in Riverside.[1]

Defendant was originally sentenced to life without the possibility of parole for the murder, plus 120 years to life for the four attempted murders, comprised of consecutive terms of 30 years to life on each attempted murder count, plus 106 years.  In the first appeal, we remanded the matter for resentencing because the record affirmatively showed the court mistakenly believed it did not have discretion to impose concurrent terms on any of the attempted murder convictions.  (§ 667, subd. (c)(6), (7); *People v. Hendrix* (1997) 16 Cal.4th 508, 512-513 [consecutive terms are not mandatory on multiple current felony convictions committed on same occasion or arising from same set of operative facts].)

---

[1] The jury found a gang special circumstance allegation true on the murder count (Pen. Code, § 190.2, subd. (a)(22)) (all further statutory references are to the Penal Code unless otherwise indicated) and gang and firearm enhancement allegations true in each count (§ 186.22, subd. (b), 12022.53, subds. (c), (d), (e)).  Defendant admitted one prior strike/prior serious felony conviction (§ 667, subds. (a)-(i)) and one prison prior (§ 667.5, subd. (b)).

On remand, the court imposed consecutive terms on counts 2 and 3 and concurrent terms on counts 4 and 5.  On this appeal, defendant challenges the sufficiency of the evidence supporting the consecutive term on count 3, but not on count 2.  He claims the decision to impose a consecutive term for the attempted murder of Elliot in count 3 was based on "an unsupported . . . factual finding," namely, that "there was a separate course of action with respect to" the shooting at Elliot in count 3.  We affirm.  We conclude substantial evidence supports the court's sentencing determinations and the court acted within its discretion in imposing the two consecutive terms.

## II.  FACTUAL BACKGROUND

A. *The Shooting*

The facts of the shooting are described in detail in our opinion in the first appeal. (*Barbarin I*, *supra*, E055565 [at pp. 3-13].)  In sum, the evidence showed that, around 11:15 p.m. on July 14, 2002, defendant and another Hispanic male, both armed with handguns and wearing ski masks, approached a group of young Blacks who were socializing on two adjoining front porches, facing University Avenue, and fired multiple shots at the group.  (*Id*. [at pp. 3-6].)  The group included the murder victim, 13-year-old Sweat, and the four attempted murder victims:  Sweat's 17-year-old sister Taren, 15-year-old Christopher S., 18-year-old Elliot, and Tywan (age unknown).  (*Id*. [at pp. 3-4].)  The shooters approached the group from a rear alleyway.  (*Id*. [at p. 5].)

One of the shooters fired a handgun six inches in front of Elliot's face, then ran past Elliot, bumping into him.  (*Barbarin I*, *supra*, E055565 [at p. 6].)  After the shooting

3

began, the group scattered and more shots were fired. Sweat and Taren ran to the alleyway behind the houses, and the other members of the group ran in different directions. (*Id*. [at pp. 5-6].) After Taren and Sweat ran to the alleyway, Taren ran toward University Avenue and flagged down a patrol officer. Sweat was found in the alleyway, lying face down with three gunshot wounds. He died from his injuries. (*Id*. [at p. 6].) None of the four attempted murder victims were shot. (*Id*. [at pp. 3-13].)

B. *The Resentencing Hearing*

At resentencing, the court acknowledged it had discretion to impose concurrent terms on the four attempted murder counts because they were committed on the same occasion and arose from the same set of operative facts. (§ 667, subds. (c)(6), (7); *People v. Hendrix*, *supra*, 16 Cal.4th at pp. 512-523.) Still, the court imposed consecutive terms on two of the attempted murder counts, after finding there were "two instances that should be punished separately" as consecutive terms: (1) the shot that was fired in front of Elliot, apparently intending to kill him, and (2) the shots that were fired at or "over the heads" of the members of the group as they fled the shooting. After noting it did not have to determine which two of the four attempted murder counts should receive the consecutive terms, the court imposed consecutive terms on counts 2 and 3, for the attempted murders of Taren and Elliot, respectively. Concurrent terms were imposed on counts 4 and 5 for the attempted murders of Christopher S. and Tywan, respectively.

4

## III.  DISCUSSION

A trial court has discretion to impose indeterminate terms consecutively (*People v. Bradford* (1976) 17 Cal.3d 8, 20) and our standard of review is deferential:  "'[I]n the absence of a clear showing that [the trial court's] decision was arbitrary or irrational, a trial court should be presumed to have acted to achieve legitimate objectives and, accordingly, its discretionary determinations ought not to be set aside on review. [Citations.]'  [Citation.]"  (*People v. Arviso* (1988) 201 Cal.App.3d 1055, 1059; *People v. Carmony* (2004) 33 Cal.4th 367, 377.)

California Rules of Court, rule 4.425[2] does not apply where the sentences at issue are all indeterminate; it only applies to determinate sentences.  (See rule 4.403; § 1170.)  But "[w]here the Rules of Court permit a trial judge to rely on certain factors when imposing consecutive determinate sentences, we find no abuse of discretion where the judge relies on those factors, by analogy, in imposing consecutive indeterminate terms."  (*People v. Arviso*, *supra*, 201 Cal.App.3d at p. 1059.)

Here, in running the indeterminate terms on counts 2 and 3 consecutive to count 1, the trial court implicitly relied on rule 4.425(a)(2), which allows consecutive terms to be imposed where "[t]he crimes involved separate acts of violence or threats of violence . . . ."  The court effectively found that, during the shooting at the group on the porches, separate acts of violence were committed when (1) a shot was fired in front of Elliot's

_____

[2]  All further references to rules are to the California Rules of Court.

face, and this shot was apparently intended to kill Elliot, and (2) additional shots were fired at or "over the heads" of the group as they fled.

Defendant claims insufficient evidence supports the finding that the shot fired in front of Elliot's face was "intended to kill" Elliot, independently of the shooters' ostensible intent to kill *everyone* in the "kill zone," including Elliot and the other four victims. (See *People v. Vang* (2001) 87 Cal.App.4th 554, 563-565 [gang-related shooting into two houses showed shooters concurrently intended to kill everyone in the two houses].) Thus, defendant claims, the consecutive term imposed on count 3 must be modified to run concurrent to the term on count 1.

Defendant points out that Elliot "gave the following testimony regarding the shooting. He was sitting in a chair, when he heard a gate between the two residences close. (3 R.T. 469-470.) He looked back and saw a gun pointed about six inches from his right temple. (3 R.T. 470-471.) He went blank and heard someone mutter something and then, the gun fired in front of his face, aiming past his face. (3 R.T. 471.) He saw muzzle flash, and by the second shot, everyone ran. He was just standing there and was bumped as the shooter ran by him. (3 R.T. 472, 482.) By the time a second shot was fired, he ran to the dirt field, as did Tywan and [Christopher S.]. (1 R.T. 70; 2 R.T. 374; 3 R.T. 472, 482.)"

At resentencing, the trial court acknowledged defendant's view of the evidence— that the shooters had no intent to kill Elliot independently of their concurrent intent to kill all of the victims in the kill zone, but the court reasonably rejected this view of the

6

evidence. As the court indicated, the evidence supported a reasonable inference that the shooters engaged in a separate act of violence (rule 4.425(a)(2)) when they initially tried to shoot and intended to kill Elliot—before they *began* shooting at the group *and* before they *continued* shooting at the group as the members of the group fled. Thus, the court did not abuse its discretion in imposing either of the two consecutive terms, including the consecutive term on count 3.

Further, and as the People point out, the court *could have* imposed consecutive terms on *each* attempted murder count because each count involved a separate victim— even if the crimes involved only a single act of violence. (*People v. Calhoun* (2007) 40 Cal.4th 398, 405-408.) Thus here, no miscarriage of justice has been shown. (Cal. Const., art. XI, § 13; *People v. Arviso*, *supra*, 201 Cal.App.3d at p. 1059 [reversal for resentencing unwarranted unless the record shows """"a manifest miscarriage of justice"""" occurred].)

## IV. DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.

7