Filed 10/17/22 P. v. Lopez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BERNARDINO PAREDES LOPEZ,<br><br>Defendant and Appellant. | F083005<br><br>(Super. Ct. No. 20CMS-3614)<br><br>**MODIFICATION OF OPINION AND DENIAL OF REHEARING [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the opinion herein filed on September 26, 2022, be modified as follows:

1. In footnote 1, add the word "the" before "Evidence Code."

2. After the third paragraph in **BACKGROUND**, which ends in "police station,"

insert the following new paragraphs:

Grandmother testified that defendant was already watching television in bed when victim got on the bed with her tablet that night. Grandmother was tired, so she lay down too, and turned her back toward victim, who was in the middle. Defendant had his back to the wall so he could see the television. Grandmother was not sure if she fell asleep before victim, but she did not notice anything happening or going on during the night. She thought defendant probably went to sleep about the same time she did because he had to get up to work.

Grandmother testified she and victim had a good relationship. Victim did not interact with defendant; she interacted with everyone else.

On cross-examination, grandmother testified she was a light sleeper; she was able to hear people crying in the next room and she could feel the bed move. She frequently woke up during the night because she used the bathroom a lot. On the night that victim slept in the bed, grandmother tossed and turned a lot because she was trying to get comfortable as victim "squirm[ed] herself up to [her] back." Grandmother did not recall anything else out of the ordinary that night. Defendant was the first to get up in the morning because he went to work. Then grandmother got up. When victim came out, she said good morning to grandmother. Grandmother asked victim if she slept well and she answered, "[Y]eah, I had a good dream."

On cross-examination, grandmother repeated that she had a good relationship with victim. But she explained that victim did not tell her about her secrets or the difficulties in her life. She was "not much of a talker like that." Grandmother said, "[W]e thought she would at least tell somebody in the house …." She thought if something bad happened she would tell her or at least her two aunts.

Grandmother testified that she and defendant were still together, but she would leave him if she had any belief that this actually occurred.

3. In the first paragraph on page 3, in the third sentence beginning with "On Friday of that week," delete the word "victim."

4. In the next sentence, delete the word "grandma" and replace it with [grandmother].

5. On page 4, after **I.     Exclusion of Aunt's Testimony**, add indentation and add the title "*A.     Section 352*." This title should be italicized.

6. On page 4, delete the letter "*A.*" before *Background*, add indentation, and change to number "**1.**" This title should not be italicized.

7.  On page 4, delete the letter "*B.*" before *Law*, add indentation, and change to number "**2.**" This title should not be italicized.

8. On page 5, delete the letter "*C.*" before *Analysis*, add indentation, and change to number "**3.**" This title should not be italicized.

9. On page 6, add the following new paragraphs after the citation ending in "386 U.S. 18, 24.)" and before **II.      Consecutive Sentences**:

### B.      *Defense Counsel's Credibility*

Defendant also argues he suffered prejudice from the trial court's exclusion of aunt's testimony because defense counsel's credibility with the jury was diminished when he failed to call a witness he promised during his oral argument.  We see no prejudice in this regard.

#### 1.      Background

In his opening statement, defense counsel told the jurors they would hear from three females, referring to grandmother and the two aunts.

> "… We also have three female family members who were either present at the exact moment that this incident supposedly took place, or were present in the house, and you will hear from them that this didn't happen, couldn't have happened in the way that was described.  And these are people that have known the victim … her whole life.

> "And I think one thing that was mentioned, one of the folks you will hear from is [victim's] grandmother, her biological grandmother who was physically in the bed.  The People are asking you to believe that the grandmother physically in the bed while this event supposedly occurred did not wake up.

> "You will hear from two other female relatives who talk[ed] to [victim] before and after.  The People also down played the fact that there was a large gap of time to the extent we even know the date this incident is alleged to have taken place.  The reporting of it was a long time after it occurred, at least three days.  And … victim went back and forth to her grandmother's [apartment] multiple times without reporting it.  [Victim] is a victim.  She is a victim of something, it was just not the conduct of [defendant] who was present here."

#### 2.      Analysis

We disagree that the trial court's exclusion of aunt's testimony caused the jurors to view defense counsel as less credible.  Defense counsel's opening statement relied on two arguments to support his conclusion that defendant did not molest victim.  First, the molestation

3.

never happened because it could not have happened, according to the three female relatives (grandmother and the two aunts) present in the apartment when the incident allegedly occurred. Counsel told the jurors, "[Y]ou will hear from them that this didn't happen, couldn't have happened in the way that was described. And these are people that have known the victim … her whole life."

But counsel supported this argument only as to grandmother— explaining that she was physically present in the bed when the incident allegedly occurred, and it was not believable that she did not even wake up. As to the two aunts, counsel provided no explanation and promised no specific testimony from them on this point. He did not suggest that they were physically present in the bedroom during the alleged incident, nor did he explain how their presence in the apartment established that the incident could not have occurred. Thus, the jurors likely did not expect the aunts to testify on this point and were not disappointed when they did not. And counsel did provide the promised testimony from grandmother on this point.

Counsel's second argument was that the molestation never happened because victim did not report it for at least three days, even though she continued going back and forth to grandmother's apartment. Counsel told the jurors, "You will hear from two other female relatives who talk[ed] to [victim] before and after…. The reporting of [the incident] was a long time after it occurred, at least three days. [V]ictim went back and forth to her grandmother's house multiple times without reporting it."

Defense counsel did not differentiate how the three females would testify, suggesting instead that they would all provide the identical testimony on this point—that victim did not report the molestation to them, even though they were part of the household, were close to her, and had known her all her life. When grandmother testified, she provided this promised testimony, referring to herself *and* the two aunts. As a result, after grandmother's testimony, all of defense counsel's promised evidence on this point had been produced, and repetition by the two aunts would have been merely corroborative of and cumulative to grandmother's testimony. Thus, after hearing grandmother's testimony, the jurors likely recognized that counsel had no reason to call two more witnesses to repeat grandmother's testimony. We conclude it is highly unlikely the jurors judged defense counsel negatively for not producing two more witnesses who would have repeated the identical information that counsel had already presented as promised. Ultimately, counsel only offered one aunt as a witness, and we see no prejudice to defendant emanating from the jury's awareness that counsel did not call that witness.

4.

This modification does not effect a change in the judgment.

The petition for rehearing is denied.

HILL, P.J.

WE CONCUR:

MEEHAN, J.

DE SANTOS, J.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>BERNARDINO PAREDES LOPEZ,<br><br>  Defendant and Appellant. | F083005<br><br>(Super. Ct. No. 20CMS-3614)<br><br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kings County.  Donna L. Tarter, Judge.

Gordon S. Brownell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Erin Doering, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Hill, P. J., Meehan, J. and DeSantos, J.

Defendant Bernardino Paredes Lopez was convicted of three counts of lewd and lascivious acts upon his six-year-old stepgranddaughter. On appeal, he contends (1) the trial court erred by excluding evidence pursuant to Evidence Code section 352,[1] and (2) the trial court abused its discretion by imposing consecutive terms. We affirm.

## BACKGROUND

While her mother and father were at work, six-year-old victim often spent the days at the apartment of her maternal grandmother and defendant, who was her stepgrandfather. Victim called defendant her grandpa. Victim's two aunts also lived in the apartment.

Victim did not usually stay overnight at the apartment, but in July 2020, she stayed for about four days so she would not have to get up early to be dropped off in the mornings. On approximately July 24, 2020, victim slept between grandmother and defendant in their bed. Victim testified that during the night, defendant grabbed her hand and put it on his penis—"a little squishy thing" that was between his legs. She felt clothes and skin. It felt "gross" and made her feel "weird." He held her hand there and moved it "like he wanted [her] to squish it." Victim pulled her hand away, but he grabbed it and put it back on his penis again. This happened three times. After the third time, victim "turned around," but defendant kept pulling her hand. When victim was asked how it ended and defendant stopped pulling her hand, she said, "It ended in the morning."

Victim testified that she did not tell grandmother about what defendant did. She thought grandmother already knew, although she could not explain how she knew. Victim remembered telling father about it when she was at home in her bed, and then later going to the police station.

---

**1** Further statutory references are to Evidence Code unless otherwise noted.

Victim's father testified that after victim's four days at the apartment, he picked victim up on a Monday at about 3:00 p.m., after he got off work. The remainder of the week, he and mother went back to dropping victim off at the apartment in the morning and picking her up around 3:00 p.m., as usual. On Friday of that week, father picked her up victim and strapped her into her car seat. As they drove home, he "asked her how her time with grandma was, and she said it was good. [He] asked her if she liked spending time at grandma's house, and [he] asked her if she had fun. She said yes, and she told [him] that [defendant] made her grab something long and hard. And [father] asked her, well, where was it, and she said down by his belly."

When they got home, father called mother. He told her what victim told him, and told her to meet them at the police station. In victim's forensic interview at the police station, the following occurred: "The interviewer asked her, 'Tell me more about it being gross?' [Victim] stated, 'Um, it, um, I don't remember of it, but it looked kind of gross. It is like boogers, when you're touching someone else's boogers.' The interviewer asked, 'It is like you're touching somebody else's boogers?' [Victim], 'Yeah.' Interviewer, 'Okay.' [Victim], 'And it looks gross.' Interviewer, 'It looks gross? What did it look like, the boogers?' [Victim], 'It was kind of like a circle thing, that it wasn't boogers.' Interviewer[], 'It wasn't boogers?' [Victim], 'Yeah, like you touch something gross.' Interviewer, 'Okay, and where was the gross thing that felt like boogers, where was that at?' [Victim], 'Um, it wasn't boogers.' Interviewer, 'It wasn't boogers?' [Victim], 'Yes.' Interviewer, 'It just felt gross like boogers?' [Victim], 'Yeah.' Interviewer, 'Okay, and where did you feel that?' [Victim], 'I felt it right here.' Interviewer, 'Um, on you or someone else?' [Victim], 'Um, on my grandpa.' Interviewer, 'Oh, on your grandpa, okay.' [Victim], 'Uh-Huh.' "

On April 13, 2021, the Kings County District Attorney filed a first amended information charging defendant with three counts of lewd and lascivious acts upon a child under 14 years of age (Pen. Code, § 288, subd. (a); counts 1–3).

3.

On April 14, 2021, a jury found defendant guilty on all three counts.

On May 12, 2021, the trial court sentenced defendant to 10 years in prison, as follows: on count 1, the midterm of six years; on counts 2 and 3, two consecutive years (one-third the midterm of six years).

On June 30, 2021, defendant filed a notice of appeal.

## DISCUSSION

### I.    Exclusion of Aunt's Testimony

Defendant contends the trial court erred prejudicially in excluding the testimony of one of the aunts (aunt) pursuant to section 352. We disagree and also conclude any error was harmless.

#### A.    *Background*

At trial, defense counsel offered aunt as the only defense witness. Counsel argued in his offer of proof that aunt would testify she was one of victim's babysitters. She spent time with and was close to victim, and yet victim never mentioned the abuse to her. The relevance, defense counsel explained, was that victim's failure to report the abuse to aunt would suggest the abuse was unlikely to have occurred at all. The prosecutor argued that the evidence was not relevant, and that calling every person to whom victim did not disclose the abuse would be an undue consumption of time. Defense counsel stated aunt would be the only witness. The trial court excluded aunt's testimony, finding it irrelevant and an undue consumption of time. The court explained that whatever probative value the evidence had would be outweighed by the risk of confusing the jurors as to why victim would disclose the abuse to aunt.

#### B.    *Law*

Under California law, evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action," and "all relevant evidence is admissible" unless "otherwise provided by statute." (§§ 210, 351.) Section 352 provides: "The court in its discretion may exclude evidence

4.

if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." "Cumulative evidence may be excluded on this basis." (*People v. Mincey* (1992) 2 Cal.4th 408, 439; *People v. Brown* (2003) 31 Cal.4th 518, 576 [§ 352 "permits the exclusion of evidence on the ground that it is cumulative"].)

"We review the trial court's rulings regarding the admissibility of the evidence for an abuse of discretion. [Citation.] A trial court's decision to admit or exclude evidence ' " 'will not be disturbed unless there is a showing that the trial court acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice.' " ' [Citations.] 'This standard of review affords considerable deference to the trial court provided that the court acted in accordance with the governing rules of law. We presume that the court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise.' " (*People v. Mataele* (2022) 13 Cal.5th 372, 413−414.)

### C.     Analysis

We cannot conclude the trial court abused its discretion in excluding aunt's testimony under section 352. Grandmother had already testified that victim told no one in the household about the abuse, and that she would have expected victim to tell one of her aunts. Grandmother said she had a good relationship with victim, but victim did not reveal her secrets or troubles to her. She said victim was "not much of a talker like that." Grandmother explained: "I mean, we thought she would at least tell somebody in the house, you know. [¶] … [¶] I think she would tell me. We thought she would at least tell [one of her aunts]." Grandmother was surprised that victim spent four more days at her home after the alleged abuse, but never said anything.

As this testimony demonstrates, aunt's proffered testimony that she was close to victim and yet victim never mentioned the abuse to her would have been cumulative to grandmother's testimony, and the trial court acted within its discretion excluding the

5.

testimony. Furthermore, because the jury heard the same evidence through grandmother, defendant was not prejudiced by the absence of aunt's testimony and any error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.)

## II.    Consecutive Sentences

Defendant contends the trial court abused its discretion by imposing consecutive sentences on counts 2 and 3. He argues the three acts of putting victim's hand on his penis were committed "very close in time" and thus constituted " 'a single period of aberrant behavior.' " We see no abuse of discretion.

### A.    Background

The prosecutor stressed that each time victim pulled her hand away from defendant's penis, defendant had the opportunity to stop and deliberate before he forced victim to touch him again. The prosecutor also argued victim was particularly vulnerable.

The trial court found victim's vulnerability was an aggravating factor because she was only six years old and had been placed in the care of her grandparents. In addition, defendant took advantage of her trust and belief that she was in a safe place. Lastly, the court found defendant engaged in violent conduct because he used force to take victim's hand and make her squeeze his penis.

The court noted the only mitigating factor was defendant's minimal prior record. And based on that mitigation, the court decided to impose the six-year midterm as the principal term on count 1.

Then, addressing the remaining two counts, the court stated: "As far as the other counts, the Court does find that their objectives are independent of each other, they involve separate acts where [defendant] was given an opportunity to reflect on his acts and he continued to engage in that conduct. So he does warrant consecutive sentencing." Accordingly, the court imposed two-year consecutive terms.

6.

### B. Law

"It is well established that a trial court has discretion to determine whether several sentences are to run concurrently or consecutively. (Pen. Code, § 669; [citation].) In the absence of a clear showing of abuse, the trial court's discretion in this respect is not to be disturbed on appeal. [Citation.] Discretion is abused when the court exceeds the bounds of reason, all of the circumstances being considered." (*People v. Bradford* (1976) 17 Cal.3d 8, 20.)

Rule 4.425(a) of the California Rules of Court[2] provides that a sentencing court may impose consecutive rather than concurrent sentences based on various facts relating to the crimes, "including whether or not: [¶] (1) The crimes and their objectives were predominantly independent of each other; [¶] (2) The crimes involved separate acts of violence or threats of violence; or [¶] (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior."

Rule 4.425(b) also permits a court to consider any aggravating or mitigating circumstances "in deciding whether to impose consecutive rather than concurrent sentences, except: [¶] (1) A fact used to impose the upper term; [¶] (2) A fact used to otherwise enhance the defendant's sentence in prison or county jail under section 1170(h); and (3) A fact that is an element of the crime." Two of the aggravating circumstances listed in rule 4.421 are that "[t]he victim was particularly vulnerable" and that "[t]he defendant took advantage of a position of trust or confidence to commit the offense." (Rule 4.421(a)(3) & (a)(11).) The existence of a single aggravating circumstance is enough to impose consecutive sentences. (*People v. Davis* (1995) 10 Cal.4th 463, 552 ["Only one criterion or factor in aggravation is necessary to support a consecutive sentence."].)

---

**2** All references to rules are to the California Rules of Court.

"The listing of factors in these rules for making discretionary sentencing decisions is not exhaustive and does not prohibit a trial judge from using additional criteria reasonably related to the decision being made," provided those criteria are stated on the record. (Rule 4.408(a).)

### C.   *Analysis*

We see no abuse of discretion in the trial court's decision that defendant's crimes deserved consecutive terms. Although defendant argues his acts occurred very close together in time, this is not entirely clear from the record. Regardless, defendant forcibly placed victim's hand on his penis three separate times, and each time victim pulled her hand away, giving defendant the opportunity to reflect on his actions and decide whether to cease or resume. Even when victim finally turned her body away from defendant, he still attempted to forcibly pull at her hand. Moreover, defendant inflicted these acts upon a six-year-old child who had been placed in his care—and who believed she was safe from harm in the trusted security of her grandparents' bed. Defendant argues that his acts were not separate acts of violence, but he does not, and cannot, argue that victim was not particularly vulnerable or that he did not take advantage of her trust in him. The trial court did not err.

### DISPOSITION

The judgment is affirmed.