Filed 4/10/13  P. v. Williams CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054152 |
| v. | (Super.Ct.No. RIF128198) |
| RODNEY JAMES WILLIAMS, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Affirmed with directions.

David McNeil Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Peter Quon, Jr. and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I. INTRODUCTION

Defendant Rodney James Williams violated Penal Code section 288, subdivision (a),[1] by committing lewd and lascivious acts against two children he babysat: six-year-old Jane Doe 1 and five-year-old Jane Doe 2. Subsequently, he babysat Jane Doe 1, Jane Doe 2, and a third child, 10-year-old Jane Doe 3. When the children were in the living room, he played a pornographic movie on the television while Jane Doe 2 danced partly naked. Jane Doe 3 put a pillow in front of her face because she did not want to watch. Defendant pulled the pillow away from her. Shortly afterward, Jane Doe 1's mother pulled into the driveway. Defendant stopped the videotape and told the children not to say anything.

In addition to being convicted of violating section 288, subdivision (a) against Jane Doe 1 and Jane Doe 2 and of exhibiting harmful matter to minors with the intent to seduce (§ 288.2, subd. (a)), he was convicted of attempted lewd and lascivious conduct against Jane Doe 3. He was sentenced to an indeterminate term of 15 years to life plus a consecutive five-year determinate term.

Defendant does not challenge his convictions for the crimes he committed against Jane Doe 1 and Jane Doe 2. His primary contention on appeal is that the evidence is insufficient to support the conviction for attempted lewd and lascivious acts with Jane Doe 3. He also asserts that the court failed to exercise its discretion when it ordered that the determinate term run consecutive to the indeterminate term. The People dispute

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

defendant's contention regarding the attempt conviction, but agree that the court failed to exercise its sentencing discretion and that a new sentencing hearing is required.

We will affirm the conviction for attempted lewd and lascivious conduct and direct the court to hold a new sentencing hearing so that it may exercise its sentencing discretion.

## II. FACTUAL SUMMARY

In the spring of 2005, Georgina M. and her daughter Jane Doe 2 were living at the home of Mary H. and her children, including Jane Doe 1. Jane Doe 1 was six years old and Jane Doe 2 was five years old. Defendant is Jane Doe 1's 20-year-old cousin. He was also living at Mary H.'s residence and would babysit Jane Doe 1 and Jane Doe 2 while their mothers were at work.

The evidence at trial regarding defendant's sexual contact with Jane Doe 1 and Jane Doe 2 consisted primarily of videotape recordings of Riverside Child Assessment Team (RCAT) interviews that were made when the children were six and five years old, respectively, and the children's testimony at trial more than five years later. The children's descriptions of events during the RCAT interviews are somewhat disjointed and chronologically vague, and their trial testimony was at times inconsistent with their RCAT statements. Nevertheless, viewing the evidence, as we must, in a light favorable to the judgment (see *People v. Johnson* (1980) 26 Cal.3d 557, 578), there is substantial evidence of multiple instances of lewd and lascivious acts by defendant upon Jane Doe 1 and Jane Doe 2, including the following: (1) defendant touched Jane Doe 1's vagina

3

with his finger when she was naked; (2) defendant licked the children's vaginas;; (3) defendant put lotion on Jane Doe 2's naked body and on the buttocks of both children; (4) the children put lotion on defendant's penis at his request; (5) defendant touched the children's buttocks and vaginas with his penis; and (6) at defendant's direction, the children sat naked on a large teddy bear as he watched and rubbed his finger on Jane Doe 2's buttocks.

On March 28, 2005, Jane Doe 3 went to Mary H.'s residence after school. Jane Doe 1 and Jane Doe 2 were there. (Some time prior to this, Jane Doe 1 and Jane Doe 2 told Jane Doe 3 that defendant had "touched" them.) Defendant played a pornographic DVD on the television in the living room with the children present. He asked Jane Doe 2 to take her clothes off. This "scared and shocked" Jane Doe 3. Jane Doe 2 pulled her pants and underwear down, and danced while the movie played. Jane Doe 3 put a pillow in front of her face. Without saying anything, defendant took the pillow away from Jane Doe 3 and sat on top of it. Defendant remained dressed and never touched Jane Doe 3 or the other children on this occasion.

After the DVD played for about five minutes, Mary H. pulled into the driveway. Defendant jumped up, stopped the DVD, and told the children not to say anything. Jane Doe 3 was scared because she did not know what would happen if she said something.

Jane Doe 1 told Jane Doe 2's mother about defendant's sexual contact with her and Jane Doe 2. Georgina M. then asked Jane Doe 2, who confirmed what Jane Doe 1 said. The police were then contacted.

4

During their RCAT interviews, Jane Doe 1 and Jane Doe 2 referred to watching a pornographic movie with defendant. It is unclear how many times the children watched the movie. At one point, Jane Doe 1 told the interviewer that Jane Doe 2 wanted to "lick [defendant's] long thingy." When the interviewer asked how Jane Doe 2 knew "about that stuff," Jane Doe 1 responded, "'Cause from [defendant]. 'Cause the movies they took away . . . .'" This suggests that they watched the movie on at least one occasion before the March 28, 2005, incident. In addition, Jane Doe 2 referred to "the first time [when] he just made me watch the movie," implying they watched the movie more than once.

At trial, defendant testified that he did not show the children a pornographic movie and did not molest them. He may have put lotion on the girls, but not in a sexual way. The defense produced three character witnesses who had known defendant for at least 15 years. Other than hearing of the allegations in this case, they had never seen or heard of defendant acting inappropriately around children.

## III. ANALYSIS

A. *Sufficiency of the Evidence to Support the Conviction for Attempt to Commit Lewd and Lascivious Acts Against Jane Doe 3*

Defendant contends the evidence is insufficient to support his conviction on count 3 for attempting to commit a lewd and lascivious act upon Jane Doe 3 in violation of section 288, subdivision (a). We disagree.

In addressing a challenge to the sufficiency of the evidence supporting a conviction, we "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson, supra,* 26 Cal.3d at p. 578.) "[A]lthough reasonable inferences must be drawn in support of the judgment, [a reviewing court] may not 'go beyond inference and into the realm of speculation in order to find support for a judgment. A [conviction] which is merely the product of conjecture and surmise may not be affirmed.' [Citations.]" (*People v. Memro* (1985) 38 Cal.3d 658, 695 (*Memro*).)

Section 288, subdivision (a) provides: "[A]ny person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child . . . ." The statute requires "a touching of 'any part' of the victim's body." (*People v. Martinez* (1995) 11 Cal.4th 434, 442.)

"An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) """Although mere preparation such as planning or mere intention to commit a crime is insufficient to constitute an attempt, acts which indicate a certain, unambiguous intent to commit that specific crime, and, in themselves, are an immediate step in the present

6

execution of the criminal design will be sufficient. [Citations.]" [Citation.]' [Citation.] No clear marker divides acts that are merely preparatory from those initiating the criminal act. Nonetheless, 'the more clearly the intent to commit the offense is shown . . . "the more likely that steps in the early stages of the commission of the crime will satisfy the overt act requirement"' of an attempt. [Citation.]" (*People v. Crabtree* (2009) 169 Cal.App.4th 1293, 1322.)

*Memro* is instructive. In that case, the state Supreme Court upheld a murder conviction on a felony-murder theory where the underlying felony was the attempt to commit a lewd and lascivious act in violation of section 288, subdivision (a). (*Memro, supra,* 38 Cal.3d at pp. 695-700.) The defendant in *Memro* asked the seven-year-old male victim if he wanted to go get a Coke. (*Id.* at pp. 690-691.) As he drove the boy to his apartment, the defendant "'had it in the back of his mind he was going to try to take some pictures of [the boy] in the nude because that is how he got his sexual satisfaction, photographying [*sic*] young boys in the nude.'" (*Id.* at p. 691.) On the walls and shelves of the defendant's apartment were hundreds of photographs of clothed and partially clad young boys. (*Id.* at p. 667.) There were also pornographic books or magazines in plain view. (*Ibid.*) The defendant took the boy into his bedroom, turned on strobe lights, and sat down on the bed. (*Id.* at p. 699.) The boy stood next to the bed watching the strobe lights for five or ten minutes. (*Ibid.*) When he suddenly announced he had to leave, the defendant became angry and strangled him with a clothesline. (*Ibid.*)

7

In concluding there was substantial evidence to support a finding of an attempt to commit lewd or lascivious conduct, the *Memro* court explained: "[T]he simple act of accompanying [the boy] up to [the defendant's] apartment probably fell within the 'zone of preparation.' However, [the defendant] went beyond preparation. He ushered the boy into the bedroom to watch the strobe lights and stayed close by. These were steps which furthered his aim of readying [the boy] for a nude photography session which was, in all likelihood, intended to culminate in lewd conduct. These acts, therefore, constituted the 'actual commencement of his plan' and were sufficient to support an attempt. [Citation.] But for [the boy's] abrupt decision to leave the apartment, it is likely that these steps would have resulted in a completed violation of section 288." (*Memro, supra,* 38 Cal.3d at p. 699.)

Defendant focuses his argument on defendant's action of removing the pillow from Jane Doe 3's face, and contends that this is evidence that he intended only to have Jane Doe 3 watch the movie. This focus, however, is too narrow. As in *Memro*, we consider the evidence of defendant's prior history and his "entire course of conduct." (*Memro, supra,* 38 Cal.3d at p. 699.)

Defendant had engaged in numerous acts of sexual contact with Jane Doe 1 and Jane Doe 2. The RCAT interviews with the younger children indicate that they had seen the pornographic movie on at least one occasion before it was shown to Jane Doe 3 and that viewing the movie may have contributed to fostering an environment where sexual contact could take place. The viewing of the movie by Jane Doe 2, for example, appears

8

to have prompted the child to say she wanted to lick defendant's "long thingy." The connection between the viewing of the movie and sexual behavior is further indicated by defendant's direction to Jane Doe 2 to take off her clothes and Jane Doe 2's willingness to dance half-naked while the movie played. In this context, defendant's acts of putting on the movie in Jane Doe 3's presence, having Jane Doe 2 take off her clothes, and pulling the pillow away from Jane Doe 3's face, could reasonably be viewed as steps in the execution of a plan to engage in sexual contact with Jane Doe 3. The jury could thus reasonably conclude that defendant's actions would have resulted in a violation of section 288 if he had not been interrupted by the arrival of Jane Doe 1's mother. We therefore reject defendant's argument.

B. *Court's Failure to Exercise Sentencing Discretion*

At the sentencing hearing, the court pronounced an indeterminate sentence of 15 years for the convictions on the three counts of violating section 288, subdivision (a). It further pronounced a total determinate sentence of five years for the convictions of attempted lewd and lascivious conduct and on the three counts of exhibiting harmful matter to a minor. The following colloquy then took place.

"THE COURT: . . . Do I have discretion in terms of consecutive versus concurrent on the determinatives (sic) versus indeterminatives (sic)? [¶] . . . [¶]

"[DEFENSE COUNSEL]: It's my experience indeterminate has to be served first.

"THE COURT: I agree. Determinate sentence will run consecutively to the indeterminate sentence, total aggregate sentence of 20 years to life."

9

Defendant and the People assert that the court had discretion to decide whether the determinate and indeterminate terms should run consecutively or concurrently, and that the court's failure to understand that it had such discretion requires a new sentencing hearing. We agree.

When a defendant is convicted of multiple offenses, the court "shall direct whether the terms of imprisonment or any of them to which he or she is sentenced shall run concurrently or consecutively." (§ 669.) In that situation, "a trial court has discretion to determine whether several sentences are to run concurrently or consecutively." (*People v. Bradford* (1976) 17 Cal.3d 8, 20.) When the record shows that the court proceeded with sentencing on the erroneous assumption it lacked discretion, the court should hold a new sentencing hearing "so that the trial court may have the opportunity to exercise its sentencing discretion." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.)

Here, the court's question to counsel indicates the court did not know whether it had discretion to impose concurrent determinate and indeterminate sentences. Defense counsel's response—that the indeterminate sentence must be served first—implies that the sentences must run consecutively. The court agreed with this and ordered the sentences to run consecutively. Applying the rules set forth above, the court must hold a new sentencing hearing to exercise its discretion in deciding whether to order defendant's determinate and indeterminate terms to run concurrently or consecutively.

## IV.  DISPOSITION

Defendant's convictions are affirmed.  Following remand, the trial court shall hold a new sentencing hearing to determine, in its discretion, whether defendant's indeterminate and determinate terms shall run concurrently or consecutively.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING _____
Acting P. J.

We concur:

MILLER _____
J.

CODRINGTON _____
J.

11