Filed 9/25/20  P. v. Keen CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRANDON SCOTT KEEN,<br><br>    Defendant and Appellant. | H046654<br>(Monterey County<br>Super. Ct. Nos.  SS152058A<br>SWF1203081) |

A jury convicted defendant Brandon Scott Keen of murder, two counts of assault with a deadly weapon by a state prisoner, and custodial possession of a weapon based on violent attacks he perpetrated on fellow inmates at Salinas Valley State Prison in 2013 and 2016.  Jurors found true that defendant personally used a deadly weapon in the commission of each crime.  Defendant admitted allegations that he had suffered certain prior convictions which were the basis for allegations that he had suffered three prior serious felony convictions and three prior strike convictions.  The trial court sentenced defendant as a third striker to 141 years to life in prison.

On appeal, defendant argues that his admissions of the prior convictions were not voluntary and intelligent because he was not advised of his constitutional rights.  He also raises two sentencing challenges, both of which the Attorney General concedes.  We shall reverse and remand with directions.

## I.  BACKGROUND

### A.  *Factual Summary*

#### 1.  *The 2013 Killing of Defendant's Cellmate*

On the morning of October 4, 2013, correctional officers at Salinas Valley State Prison heard defendant calling out "man down" and responded to his cell.  Defendant was standing near the door of the locked cell; his cellmate lay motionless on the cell floor, his face covered in blood.  Officers were unable to resuscitate the cellmate, who died at the scene.

The forensic pathologist who performed the cellmate's autopsy found evidence of blunt force trauma to the face, brain bleeding, and strangulation as well as five stab wounds to the back.  She opined that the cellmate's death was caused by blunt force trauma to the head with strangulation and identified stab wounds as potentially contributing factors.

#### 2.  *The 2016 Fight*

On August 31, 2016, correctional officers at Salinas Valley State Prison observed defendant and another inmate fist fighting in the yard.  After the other prisoner stopped fighting, defendant made several slashing motions at the right side of the other inmate's face.  After separating the inmates, officers saw defendant throw a small object.  They recovered that object, which was an inmate-manufactured weapon—a toothbrush with two razor blades tied to the end of it with string.   The other inmate suffered "slashing-type wounds" to the right side of his face.

### B.  *Procedural History*

The Monterey County District Attorney charged defendant with murder (Pen. Code, § 187, subd. (a), count 1)[1] and assault with a deadly weapon by a state prisoner (§ 4501, subd. (a), count 2) based on the 2013 killing of his cellmate.  The information

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

alleged that defendant personally used a deadly weapon within the meaning of section 12022, subdivision (b)(1) in the commission of the murder and that he personally used a deadly weapon within the meaning of sections 667 and 1192.7 in the commission of the assault (§ 969f, subd. (a)). The information charged defendant with assault with a deadly weapon by a state prisoner (§ 4501, subd. (a), count 3) and custodial possession of a weapon (§ 4502, subd. (a), count 4) based on the 2016 fight and alleged that defendant personally used a deadly weapon within the meaning of sections 667 and 1192.7 in the commission of those crimes (§ 969f, subd. (a)). Finally, the information alleged that defendant had suffered three prior serious felony convictions (§ 667, subd. (a)(1)), which also qualified as prior strike convictions within the meaning of the Three Strikes law (§§ 667, subd. (b)-(i), 1170.12).

The case was tried to a jury in January 2019. On January 15, 2019, just before the defense rested its case, the parties and the court discussed jury instructions outside the presence of the jury. Then, before bringing in the jury, the court stated its understanding that defendant would be admitting the prior convictions. Defense counsel confirmed that defendant was prepared to admit the allegations. The following exchange then occurred:

"[THE COURT:] Mr. Keen, it's my understanding that you're prepared to admit that you've previously been convicted of Penal Code Section 203, on February 21, 2013, out of the County of Riverside; their case number, S-W-F, Sam-Wilson-Frank, 1-2-0-3-0-8-1. Do you admit that prior conviction? [¶] [DEFENDANT:] Yes. [¶] THE COURT: Next, that you previously have been convicted of Penal Code Section 245(a)(1), on February 21, 2013, out of Riverside County, Docket Number, Sam-Wilson-Frank, SWF-1203081. Do you admit that prior conviction for Penal Code Section 245(a)(1)? [¶] [DEFENDANT]: Yes. [¶] THE COURT: Those essentially happened on—they were on the same date and time, out of the same place, as far as the conviction goes. [¶] The third one is Penal Code Section 451(d), as in 'delta,' on September 16, 2008, out of Riverside County, Docket Number S-W-F, Sam-Wilson-Frank, 0-2-6-7-0-9. Do you

3

admit that prior conviction for Penal Code 451(d), as in 'delta?' [¶] [DEFENDANT]: Yes. [¶] THE COURT: And you enter into those admissions, [defense counsel]? [¶] [DEFENSE COUNSEL]: I do. [¶] THE COURT: The Court accepts those admissions, and they will be for purposes of the trial; then, there will be no bifurcation or evidence presented to the jury on those issues regarding the—any allegations involving those—any allegations or enhancements involving those prior three convictions."

The next day, the jury found defendant not guilty of first degree murder but guilty of the lesser included offense of second degree murder. The jury returned guilty verdicts as to the other charges and found true all the personal use of a weapon allegations.

On February 22, 2019, the trial court imposed sentence. On count 1, the court imposed a term of 45 years to life (15 years to life tripled under the Three Strikes law) plus a consecutive five years for each of the three prior serious felony enhancements and a consecutive one year for the personal use of a deadly weapon enhancement for a total of 61 years to life. As to count 2, the court imposed a term of 25 years to life under the Three Strikes law plus a consecutive five years for each of the three prior serious felony enhancements, stayed pursuant to section 654. On count 3, the court imposed a consecutive term of 25 years to life under the Three Strikes law plus a consecutive five years for each of the three prior serious felony enhancements for a total of 40 years to life. As to count 4, the court imposed a consecutive term of 25 years to life under the Three Strikes law plus a consecutive five years for each of the three prior serious felony enhancements for a total of 40 years to life.

Defendant timely appealed.

II. **DISCUSSION**

A. *Admission of Prior Conviction Allegations*

Before accepting a defendant's admission of a prior conviction allegation, the trial court must advise the defendant of the constitutional rights waived by such an admission—the privilege against self-incrimination and the rights to confrontation and a

jury trial—and obtain express waiver of those rights. (*In re Yurko* (1974) 10 Cal.3d 857, 863.) In the absence of express admonitions and waivers, reversal is required unless the record as a whole shows the admission was voluntary and intelligent under the totality of circumstances. (*People v. Mosby* (2004) 33 Cal.4th 353, 361 (*Mosby*).) Among the relevant circumstances is the defendant's prior experience with the criminal justice system, which sheds lights on his or her knowledge of his or her rights. (*Id*. at p. 365.)

Here, the trial court did not advise defendant of any of his rights before accepting his admissions to three prior convictions.[2] The admissions were made during trial, a day after defendant testified in his own defense and before the People put on their rebuttal case. The record shows defendant was convicted of assault with a deadly weapon in 2006, arson of property in 2008, and mayhem and assault with a deadly weapon in 2013. At the time defendant was convicted of mayhem and assault with a deadly weapon, prior prison term enhancement allegations were charged and found true.

This record does not " '*affirmatively show*[ ]' that the defendant's waiver of constitutional rights was voluntary and intelligent." (*People v. Farwell* (2018) 5 Cal.5th 295, 306.) While this was not defendant's first experience with the criminal justice system, the record does not indicate whether any of his prior convictions were obtained by guilty plea or whether he admitted the prior prison term enhancement allegations in 2013. "Consequently, 'we cannot infer that he would have received advisements in his prior cases.' [Citation.]" (*People v. Lloyd* (2015) 236 Cal.App.4th 49, 60; cf. *Mosby*, *supra*, 33 Cal.4th at p. 365 [holding that totality of the circumstances showed defendant's prior conviction admission was voluntarily and intelligently despite absence of full

---

[2] After accepting the admissions, the trial court noted: "there will be no bifurcation or evidence presented to the jury on those issues regarding the—any allegations involving those—any allegations or enhancements involving those prior three convictions." Contrary to the Attorney General's argument, that post-admission statement did not constitute advisements of defendant's jury trial and confrontation rights.

advisements where, among other things, defendant previously had pleaded guilty].) Defendant made the admissions during a trial at which "he had, through counsel, confronted witnesses" and had opted to testify. (*Mosby*, *supra*, at p. 364.) But even if we were to infer that defendant was aware of his rights to confront witnesses and to remain silent *at trial*, we cannot infer that he was aware that those rights applied to the prior conviction enhancement allegations because he was not advised of his right to a jury trial on those allegations. We shall reverse and remand for retrial of the prior conviction enhancement allegations.

The three alleged prior serious felony convictions arose in just two separate cases. Consequently, as the parties agree, they support—at most—two, not three, five-year enhancements. (See § 667, subd. (a)(1) ["any person convicted of a serious felony who previously has been convicted of a serious felony . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. . . ."]; *People v. Frausto* (2009) 180 Cal.App.4th 890, 903 ["To satisfy the 'brought and tried separately' requirement, 'the underlying proceedings must have been formally distinct, from filing to adjudication of guilt.' [Citations.]"].) Accordingly, on remand following the retrial of the prior conviction enhancement allegations, the trial court should impose a five-year enhancement only for each prior serious felony conviction found true *and* brought and tried separately.

## B.    Section 654

Defendant was convicted of assault with a deadly weapon by a state prisoner (count 3) and custodial possession of a weapon (count 4) based on his involvement in the 2016 fight in the prison yard. He argues that the trial court erred in failing to stay punishment on the custodial possession of a weapon count under section 654 because that count was based on the same conduct as the assault with a deadly weapon count. The Attorney General agrees.

6

*1.     Statutory Principles and Standard of Review*

Section 654, subdivision (a) provides, in relevant part, that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "[I]t is well settled that section 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.] Whether a course of conduct is indivisible depends upon the intent and objective of the actor." (*People v. Perez* (1979) 23 Cal.3d 545, 551.) If multiple offenses were incident to one objective, the defendant may not be punished for more than one. "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct." (*Ibid*.) The purpose of the protection against multiple punishments is to ensure that the defendant's punishment will be commensurate with his criminal culpability. (*Id*. at p. 551.)

The applicability section 654 is a question of fact for the trial court, whose determination we review for substantial evidence. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143 (*Jones*).)

*2.     Analysis*

Here, defendant was convicted of both illegally possessing a weapon (§ 4502, subd. (a), count 4) and of an offense employing that weapon, namely assault with a deadly weapon by a state prisoner (§ 4501, subd. (a), count 3). In such circumstances, section 654 permits both crimes to be punished " 'where the evidence shows a possession distinctly antecedent and separate from the primary offense . . . .' " (*People v. Bradford* (1976) 17 Cal.3d 8, 22 (*Bradford*).) Thus, "multiple punishment is proper

7

where the evidence shows that the defendant possessed the [weapon] before the crime, with an independent intent." (*Jones*, *supra*, 103 Cal.App.4th at p. 1144.)  " 'On the other hand, where the evidence shows a possession only in conjunction with the primary offense, then punishment for the illegal possession . . . has been held to be improper where it is the lesser offense.' [Citation.]" (*Bradford*, *supra*, at p. 22.)  For example, "multiple punishment is improper where the evidence 'demonstrates at most that fortuitous circumstances put the [weapon] in the defendant's hand only at the instant of committing another offense . . . .' [Citation.]" (*Jones*, *supra*, at p. 1144.)

Here, the evidence showed only that defendant had a weapon in the final moments of the fight.  The officers on the scene testified that they did not see how the fight began or whether defendant took the weapon from his opponent.  Accordingly, we agree with the parties that the trial court's implicit finding that defendant possessed the weapon before the fight is not supported by substantial evidence.  On remand, the trial court shall stay the punishment imposed for custodial possession of a weapon (§ 4502, subd. (a), count 4) pursuant to section 654.

III.    **DISPOSITION**

The judgment is reversed.  The matter is remanded to the trial court for the limited purposes of conducting a new trial on the prior conviction enhancement allegations and holding a new sentencing hearing at which the trial court shall (1) stay the punishment imposed for custodial possession of a weapon (§ 4502, subd. (a), count 4) pursuant to section 654 and (2) impose a five-year enhancement only for each prior serious felony conviction found true *and* brought and tried separately.

_____

ELIA, J.

WE CONCUR:


_____

PREMO, Acting P.J.



_____

BAMATTRE-MANOUKIAN, J.




*People v. Keen*
H046654