Filed 11/15/22  P. v. Gonsalves CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TODD WILLIAM GONSALVES,<br><br>Defendant and Appellant. | A164048<br><br>(Humboldt County<br>Super. Ct. No. CR2101527) |

Defendant Todd William Gonsalves was convicted after jury trial of attempting to make a criminal threat against his girlfriend K.B. and of unlawfully possessing a firearm.[1]  He challenges on appeal his conviction and sentence, contending that (i) the trial court should have granted a mistrial after his ex-girlfriend D.B. volunteered the statement that he had threatened her "so many" times in the past; (ii) his admission to two prior strike convictions was invalid because he did not expressly waive his constitutional rights to trial by jury and confrontation, and his privilege not to incriminate himself; (iii) Penal

---

[1] Gonsalves was also convicted of a misdemeanor violation of Penal Code section 273.6, subdivision (a), as count three.  At trial, he conceded his liability on this count, and he raises no issue with his conviction or sentence as to this count on appeal.  Accordingly, we do not further discuss this count or the evidence concerning it.

1

Code section 654,[2] prohibiting multiple punishments for the same act or course of conduct, was violated when the trial court sentenced him concurrently for the attempted threat and unlawful gun possession convictions, rather than imposing one sentence and staying the other; and (iv) if he was in fact sentenced in violation of section 654, this court should remand the case to the trial court so that it can exercise its discretion to consider which sentence to impose and which to stay pursuant to a newly enacted statute, Assembly Bill No. 518.

The Attorney General concedes, and we agree, that Gonsalves should have been advised of his constitutional rights before the trial court accepted his admission to the two prior strike convictions. We vacate the judgment and remand for correction of that conceded error, but for the reasons discussed below we reject Gonsalves's other claims of error.

## BACKGROUND

This case arises factually out of a confrontation between Gonsalves and his girlfriend, K.B., in the parking lot of a post office in Humboldt on May 20, 2021. We summarize the facts briefly here and relate them in more detail as they are relevant to Gonsalves's legal arguments in our discussion of those arguments.

K.B. was accompanying her ex-sister-in-law, S.W., in running errands the afternoon of May 20, 2021, when she saw Gonsalves. She knew that Gonsalves did not get along with S.W. and did not like it when K.B. spent time with S.W. According to a statement K.B. made to a police officer that afternoon, she was waiting in her car for S.W. at

_____

[2] All subsequent statutory references are to the Penal Code except as otherwise noted.

2

the post office when Gonsalves approached her and flashed a gun in his waistband by lifting his shirt. Gonsalves told K.B. that because she was hanging out with S.W., she had a half-hour to give him $200 that he claimed she owed him or Gonsalves would shoot K.B., S.W., and K.B.'s children. K.B. also showed the police officer a text stating that Gonsalves had a Glock; she said Gonsalves sent it before he walked up to her. K.B. later e-mailed the police officer a copy of the text, which stated, "Don't answer and I['m] grabbing the Glock and coming." K.B. told the officer that she was scared when Gonsalves threatened her, S.W., and the children.

Gonsalves was tried on an information accusing him of criminal threats in violation of section 422 (count one), with an enhancing allegation that he personally used a firearm in committing that crime, and accusing him of possessing a firearm while prohibited from doing so by reason of a prior felony conviction in violation of section 29800, subdivision (a)(1) (count two).

At trial, K.B. offered a significantly different account of her encounter with Gonsalves on May 20. She testified that Gonsalves confronted her in the post office parking lot about spending time with S.W., but he did not have a gun and did not threaten to kill her. Instead, when he lifted his shirt, K.B. saw his belt buckle, not a gun, and the only threat he made was to end their relationship if she continued to hang out with S.W. K.B. denied ever telling an officer that Gonsalves had threatened her or that Gonsalves had a gun; in fact, K.B. denied speaking with the police officer in person at all. She also denied that she was placed in fear by anything Gonsalves said to her that day.

3

In light of K.B.'s recantation, the prosecution called the officer who took her statement on May 20. Excerpts of the officer's body camera were played for the jury showing K.B.'s May 20 statement detailing the threats. And the jury heard jail call recordings where Gonsalves pleaded with K.B. to recant her May 20 statement and offered her $1,000 to tell the police she was lying.

S.W. did not testify at trial but the jury saw body camera excerpts of a statement she made that she saw the outline of a gun in Gonsalves's waistband as he approached K.B.'s car, although she did not hear the threats themselves. The jury also heard that no gun was ever located on Gonsalves's person, in his car, or in his home.

Prior to trial, the trial court issued an in limine ruling permitting some evidence to be introduced pursuant to Evidence Code section 1109, subdivision (a)(1). This provision allows the prosecution in a domestic violence case to present evidence of prior acts of domestic violence to show propensity, subject to the trial court's power to exclude the evidence where its probative value is substantially outweighed by its prejudicial effect or undue consumption of time pursuant to Evidence Code section 352. In Gonsalves's trial, the jury heard testimony from D.B., a prior girlfriend of Gonsalves's, that in 2016, Gonsalves threatened to kill her and her children. D.B. also volunteered that Gonsalves had threatened her "so many" times in 2016; this statement was the subject of a mistrial motion and we describe it in further detail in our discussion of Gonsalves's claim of error in connection with this motion.

The jury acquitted Gonsalves of count one, making a criminal threat in violation of section 422, but it convicted him of the lesser

included charge of attempting to make a criminal threat.  It found not true the use of a firearm allegation in the lesser included charge to count one, but it convicted him of count two, possessing a firearm while prohibited by a prior felony conviction.

Following the verdict, Gonsalves admitted that he had suffered two prior strikes, but before he made the admission he was not advised of his privilege against self-incrimination, his right to a jury trial, or his right to confront witnesses against him, and he did not expressly waive those rights and privileges.

At sentencing, the trial court dismissed one prior strike allegation.  It sentenced Gonsalves to four years in state prison:  the mid-term of two years on the felon-in-possession conviction, doubled for the prior strike, and a concurrent upper term of 18 months on the attempted threat conviction, doubled for the prior strike.  This appeal followed.

## DISCUSSION

### I. Mistrial Motion

Gonsalves contends that the trial court erred in refusing his request for a mistrial after D.B. told the jury that "there [were] so many" threats during her relationship with him.  We see no abuse of discretion here.

A trial court should grant a mistrial "only when a ' "party's chances of receiving a fair trial have been irreparably damaged." ' " (*People v. Ayala* (2000) 23 Cal.4th 225, 282.)  Where a trial court is apprised of prejudice to a party that is "incurable by admonition or instruction," a mistrial is proper.  (*People v. Haskett* (1982) 30 Cal.3d 841, 854.)  But " '[w]hether a particular incident is incurably prejudicial

5

is by its nature a speculative matter[.]' " (*People v. Ledesma* (2006) 39 Cal.4th 641, 683.)  The trial court is best positioned to assess the impact of the prejudicial testimony and the curative effect of instruction in light of all the evidence; accordingly, " 'the trial court is vested with considerable discretion in ruling on mistrial motions.' " (*Ibid.*)

Here, the trial court issued an in limine order permitting the prosecution to elicit testimony from D.B. "regarding any criminal threats that were made by [Gonsalves] to her" while they were dating, but excluding testimony about "physical altercations" between Gonsalves and D.B.  It appears that the prosecution and defense were aware of only one incident in 2016 where Gonsalves threatened D.B. and her children, which D.B. reported to law enforcement.  The prosecutor admonished D.B. before her testimony that "we are only talking about one instance," "the 2016 incident regarding threats." D.B. "did seem a little confused," according to the prosecutor, about what she would be testifying about, but the prosecutor "didn't want to tell [D.B.] her testimony" and did not offer further clarification.

When D.B. was on the witness stand, the prosecutor asked her whether Gonsalves had threatened her in 2016, and D.B. affirmed that he had.  When asked where the "threats" took place, D.B. responded that "there [were] so many that I'm not sure exactly which threats you're talking about."  The defense objected and asked to approach. After sidebar, the trial court struck D.B.'s answer as nonresponsive. The prosecutor continued the examination by asking a more specific question:  "did you speak with a deputy regarding . . . an instance where Mr. Gonsalves made a threat to you?"  After D.B. reviewed an

6

incident report to refresh her recollection, she related to the jury that Gonsalves threatened to kill her and her children in 2016, and she believed him and reported it to the sheriff's department that evening. The prosecution elicited no further details, and the defense did not cross-examine D.B.

After testimony concluded that day, the defense moved for a mistrial on the grounds that D.B.'s statement about "so many" threats left the jury with an impression of "an almost indeterminate number of terroristic threats" by Gonsalves, resulting in incurable prejudice. The trial court denied the mistrial motion, noting it had struck the statement and offering to consider any additional jury instructions or curative efforts the parties proposed. No party requested a pinpoint instruction. After the evidence closed, the trial court gave the jury the pattern instruction concerning evidence, CALCRIM No. 222, which instructed them to disregard and not consider for any purpose testimony that the court ordered stricken from the record.

The trial court did not abuse its discretion in refusing to order a mistrial because it is not reasonably probable that D.B.'s fleeting and ambiguous statement had a prejudicial effect.[3] While every case must be evaluated on its own unique facts, prior cases teach that witnesses'

---

[3] Gonsalves contends that D.B.'s volunteered statement exceeded the scope of the trial court's in limine order, which contemplated D.B. would testify only to threats she reported to law enforcement in 2016. The Attorney General does not concede this point, but we agree with Gonsalves that this statement should not have been presented to the jury. Before evidence of prior uncharged acts of domestic violence may be admitted, the prosecution must disclose the evidence to the defendant (Evid. Code, § 1109, subd. (b)), and that did not happen here, apparently because the prosecution was unaware of other threats Gonsalves allegedly made to D.B.

brief references to defendants' criminal history or incarceration typically will not render a trial irreparably unfair.  (See *People v. Collins* (2010) 49 Cal.4th 175, 198–199 [no mistrial where witness volunteered testimony that defendant was "in Susanville" and "got out" shortly before events in the case]; *People v. Valdez* (2004) 32 Cal.4th 73, 124–125 [no mistrial where witness mentioned defendant's time at "Chino Institute"]; *People v. Bolden* (2002) 29 Cal.4th 515, 555 [no mistrial where witness said he obtained defendant's address from the "parole office"]; *People v. Franklin* (2016) 248 Cal.App.4th 938, 954–955 [no mistrial where three isolated references to probation or prior criminal history; trial court gave curative instruction].)  That is especially true where the trial court acts quickly to address any potentially prejudicial testimony.  "[I]t is only in the 'exceptional case' that any prejudice from an improperly volunteered statement cannot be cured by appropriate admonition to the jury."  (*Id*. at p. 955.)  Here, the trial court immediately struck the statement and later instructed the jury to disregard any testimony struck from the record.  We presume the jury followed that instruction.  (*People v. Yeoman* (2003) 31 Cal.4th 93, 139.)

Gonsalves argues that the presumption should not control here because D.B.'s emotional testimony was so powerful that the jury could not reasonably be expected to disregard it.  The record does reflect that D.B. was tearful, but it does not suggest there was anything indelible or even especially striking about her volunteered statement.  To the contrary, her reference to "many" threats was immediately followed by the trial court's order striking the testimony, and her subsequent

8

testimony describing the 2016 reported threat was unembellished and brief.

This case is thus dissimilar to the two cases Gonsalves primarily relies on in arguing he was incurably prejudiced. In *People v. Disa* (2016) 1 Cal.App.5th 654 (*Disa*), we concluded that the trial court erred in admitting under Evidence Code section 1109 extensive evidence about the nature of a defendant's prior attack on his ex-girlfriend, and in particular that he planned the attack and lay in wait to carry it out. (*Disa*, at pp. 673–674.) We concluded that the fact of the attack itself was probative and admissible concerning the defendant's propensity to commit domestic violence (*id.* at p. 672), but the "vivid" details the jury heard of planning and ambush in that prior attack were inflammatory and irrelevant to the purpose for which the evidence was ostensibly admitted, i.e. propensity to commit domestic violence (*id.* at pp. 674–675). Because a limiting instruction concerning the purpose of that evidence "could not erase" the details of the prior attack from jurors' minds, we concluded there was prejudice and reversed the judgment. (*Id.* at p. 675.) In *People v. Turner* (2021) 73 Cal.App.5th 117 (*Turner*), a sister division concluded that the jury in a homicide case could not reasonably be expected to disregard evidence of a different charged murder, where the latter charge was initially at issue in the trial but was severed at the close of evidence. (*Id.* at pp. 128–129.) The jury in *Turner* heard about the different charged murder during opening statements and throughout the trial, but when the different charged murder was severed, they were instructed to disregard the evidence of it. (*Id.* at p. 129.) *Turner* concluded that it was simply unrealistic to expect jurors to follow an instruction to disregard this "shocking"

9

evidence that had been in their minds for a week. (*Id.* at pp. 129–130.) *Disa* and *Turner* are unhelpful to Gonsalves's argument here because they are both cases where the jury heard extensive inflammatory and irrelevant evidence, unlike this case where the putatively prejudicial testimony was brief and immediately stricken.[4]

We also note that D.B.'s statement—Gonsalves made "so many" threats—was ambiguous in that it did not specify that he made criminal or violent threats. As used by a lay witness, the word "threats" in interpersonal relationships can encompass many kinds of conduct and speech, such as the "threat" that K.B. testified Gonsalves made to break up with her if she continued to spend time with S.W. Even setting aside the presumption that the jury disregarded D.B.'s statement about "so many" threats, the statement is still not so striking that it is likely to have influenced the jury. Moreover, Gonsalves raises no claim of error in the admission of statements from K.B. on the body camera footage that Gonsalves sent her "so many texts" containing threats, and that he sent threatening texts to her "[e]very time [she left] his sight." D.B.'s volunteered statement is not reasonably probable to have had any effect on the jury beyond the impression they already had from these similar statements by K.B. for which no error is claimed.

---

[4] As the Attorney General points out, *Disa* is not a mistrial case, and the inflammatory and irrelevant testimony the jury heard in that case was never stricken. We understand Gonsalves's point in relying on *Disa* to be that the jury cannot always be presumed to follow a curative or limiting instruction, but the facts of this case are very different from *Disa*.

## II. Required Advisements and Waivers

After the jury returned its verdict, Gonsalves admitted that he had suffered prior strike convictions in 2009 and 1999. As a "prophylactic measure," prior to accepting a guilty plea or an admission to a prior conviction allegation that enhances punishment, a trial court "must inform the defendant of three constitutional rights—the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers—and solicit a personal waiver of each." (*People v. Cross* (2015) 61 Cal.4th 164, 170.) The record here does not reflect that Gonsalves received what is commonly known as the *Boykin-Tahl* advisement[5] before admitting prior strikes, nor did he expressly waive these rights.

Gonsalves contends, and the Attorney General concedes, that the *Boykin-Tahl* advisements and waivers apply to his admission of the prior strike convictions, and that reversal is required here. We agree. The record is silent as to whether Gonsalves understood the rights he waived by admitting the prior strike allegations; we therefore cannot say the record "affirmatively shows" that Gonsalves's admission was voluntary and intelligent, as we must to find this error harmless. (*People v. Cross, supra,* 61 Cal.4th at pp. 179–180.) We thus vacate the judgment and sentence, which was based on his admission, and remand for further proceedings. On remand, Gonsalves should be advised of his rights and given the choice either to exercise or waive them.

---

[5] The appellation comes from *Boykin v Alabama* (1969) 395 U.S. 238, 243–244, and *In re Tahl* (1969) 1 Cal.3d 122, 130–133.

### III. Section 654

The trial court sentenced Gonsalves to four years on the violation of section 29800, subdivision (a)(1) (the second count) and to three years concurrent on the attempted violation of section 422. Gonsalves contends in committing both crimes he was engaged in one indivisible course of conduct with a single purpose: threatening K.B. He therefore argues that the trial court was obliged to stay one of these concurrent terms to avoid punishing him doubly for the same conduct. We reject this argument, concluding the trial court's implied finding that the crimes had different objects was supported by substantial evidence.

Section 654, subdivision (a), provides in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." Thus, " '[i]f only a single act is charged as the basis of the multiple convictions, only one conviction can be affirmed[.]' " (*Neal v. State of California* (1960) 55 Cal.2d 11, 19 (*Neal*), overruled in part on other grounds by *People v. Correa* (2012) 54 Cal.4th 331.) Where more than a single act is charged, section 654 may still apply if multiple acts form a single course of criminal conduct that is incident to one objective. (*People v. Corpening* (2016) 2 Cal.5th 307, 311.) Whether multiple acts form a single course of criminal conduct is a factual determination, and depends on the intent and objective of the actor. (*Neal*, at p. 19.) If the trial court imposes concurrent terms without discussing section 654, it has made an implied factual finding that the defendant had more than one criminal intent or objective (*People v. Osband* (1996) 13 Cal.4th 622, 730), and we review that factual finding

12

for substantial evidence in the light most favorable to the judgment. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143 (*Jones*).)

When a defendant is punished for a crime that involves using a gun, and for the separate crime of possessing the gun, the application of section 654 " 'depends upon the facts and evidence of each individual case.' " (*People v. Bradford* (1976) 17 Cal.3d 8, 22 (*Bradford*).) Where the facts show that a defendant possesses a firearm " 'only in conjunction with the primary offense,' " multiple punishments offend section 654. (*Bradford*, at p. 22.) This is illustrated by *Bradford*: when the defendant was stopped by a police officer after robbing a bank, he wrested the officer's gun away from the officer and then shot at the officer. (*Id*. at p. 13.) Because the evidence showed that the defendant took possession of the gun only for the purpose of committing an assault with it, separate punishments for gun possession and assault could not lie. (*Id*. at pp. 22–23; accord *People v. Venegas* (1970) 10 Cal.App.3d 814, 819, 821–822 [defendant who grabbed a gun in a struggle and then shot someone with it could not be punished both for possession and the shooting].) By contrast, evidence showing that the defendant was already in possession of a gun before committing another crime with the gun tends to demonstrate multiple criminal objectives supporting separate sentences. (See, e.g., *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1378–1379 (*Ortiz*) [defendant who arrived at the scene of a kidnapping already in possession of firearm was properly subject to separate punishments]; *Jones, supra,* 103 Cal.App.4th at pp. 1147–1148 [defendant who drove to ex-girlfriend's

home in possession of gun and then shot into the home 15 minutes later was properly subject to separate punishments].)[6]

In this case, evidence showed that K.B. and S.W. saw Gonsalves while they were sitting in traffic on their way to the post office. Then they went straight to the post office, and K.B. saw Gonsalves turn his car into the post office parking lot as well. After S.W. got out of K.B.'s car to run an errand inside the post office, Gonsalves approached K.B. with the gun. This evidence supports a reasonable inference that Gonsalves was already in possession of the gun for some purpose before he encountered K.B. and S.W. sitting in traffic, and he opportunistically used the gun to threaten K.B. rather than acquiring and possessing the gun solely in order to threaten K.B. Viewing this evidence in the light most favorable to the judgment, we conclude that the trial court's implicit determination that Gonsalves had separate objectives in possessing the gun and threatening K.B. was supported by substantial evidence. It therefore did not violate section 654 for the trial court to impose concurrent sentences for these two crimes.

---

[6] Our sister Courts of Appeal have sometimes articulated the rule that "section 654 is inapplicable when the evidence shows that the defendant arrived at the scene of his or her primary crime already in possession of the firearm." (*Jones*, *supra*, 103 Cal.App.4th at p. 1145; see also *Ortiz*, *supra*, 208 Cal.App.4th at p. 1379.) Gonsalves takes issue with this rule, contending that it is at odds with our Supreme Court's holding that a case involving multiple acts must always be analyzed for section 654 violations using the single objective test that *Neal* articulated. We have no occasion today to decide whether the *Jones-Ortiz* rule controls in all cases. Rather, we follow *Bradford*'s instruction to apply section 654 to the facts and evidence of this case.

## IV. Assembly Bill No. 518's Amendment to Section 654

Assembly Bill No. 518, which became effective January 1, 2022, amended section 654, subdivision (a). Prior to the amendment, where a trial court stayed a sentence under section 654, it was required to give effect to the longest sentence and to stay shorter sentences. Under the amendment, the trial court may select which sentence to stay. (Legis. Counsel's Dig., Assem. Bill No. 518 (2021–2022 Reg. Sess.).) Gonsalves argues that, because one of his sentences should be stayed, we should on remand direct the trial court to exercise its newly granted discretion as to which sentence to stay. Because we have concluded that the trial court's decision not to stay either sentence was supported by substantial evidence, we reject this argument.

## DISPOSITION

The judgment and sentence are vacated and the matter is remanded for further proceedings in accordance with this opinion.

_____
Van Aken, J.*

We concur:


_____
Stewart, Acting P.J.


_____
Miller, J.

*People v. Gonsalves* (A164048)


 * Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.