Filed 11/6/25  P. v. Martinez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JORGE LUIS MARTINEZ,<br><br>    Defendant and Appellant. | F087933<br><br>(Super. Ct. No. MCR070134)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Michael J. Jurkovich, Judge.

Moran Law Firm, Amanda K. Moran, and S. Eric Bishop II for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ian Whitney, and Joseph Penney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In 2023, a jury convicted appellant Jorge Luis Martinez of multiple sexual crimes with a female who was younger than 10 years of age. Appellant was sentenced to prison for an aggregate determinate term of 14 years 10 months, with a consecutive aggregate indeterminate term of 80 years to life.

Appellant raises four claims on appeal. He contends substantial evidence does not support his judgment. He argues that the prosecutor asked improper questions during voir dire, which "preconditioned" the jury against him. He raises a claim of ineffective assistance of counsel based on his trial attorney's alleged failure to object to certain testimony from a witness. Finally, he argues the trial court abused its sentencing discretion. We reject all of appellant's contentions and affirm.

## BACKGROUND

Jane Doe was born in April 2011. She was in the sixth grade and 11 years old when she testified at trial in this matter. When the sexual assaults occurred, appellant was Doe's stepfather. Appellant was born in October 1985. From May 2016 through October 2018, appellant lived with Doe and her mother in a house in Madera, California. During summer breaks, Doe lived with her biological father.

According to Doe's trial testimony, she was about five or six when the sexual assaults occurred. She defined a sexual assault as someone touching a person's "private part" who does not want to be touched. She said the assaults occurred when she lived with her mom and appellant in their house in Madera. She believed the incidents all happened when she was in the first or second grade. She believed the assaults stopped when she was six or seven years old.

## I. The Sexual Intercourse in Counts 1 and 2.

Doe testified that appellant put his "private part" inside her "private part" between five and 10 times. At trial, she specifically recalled two incidents involving sex. There

was a time when she was asleep and she woke up realizing his private part was inside her private part. She also recounted a time on the couch when her legs were up and appellant put his private part inside her.

In counts 1 and 2, the jury convicted appellant of two counts of sexual intercourse of a minor under the age of 10 years (Pen. Code, § 288.7, subd. (a)).[1]

## II. The Oral Copulation in Counts 3 and 4.

At trial, Doe said that she put appellant's penis in her mouth on multiple occasions. She recalled two specific incidents. She orally copulated appellant in the shower. On another occasion, she copulated him while on her mother's bed.

In counts 3 and 4, the jury convicted appellant of two counts of oral copulation or sexual penetration of a minor under the age of 10 years (§ 288.7, subd. (b)).

## III. The Lewd and Lascivious Conduct in Counts Five Through Eight.

Doe testified that she used her hands to play with appellant's penis about five to 10 times. She recalled specific incidents where she touched his penis on a couch. Doe also told the jury that appellant kissed her mouth during the sexual assaults, he kissed her chest on at least one occasion, and he "smacked" her butt after one incident in the shower. She recalled a time when she sat in the passenger seat while appellant was driving, and he touched her private part over her clothes.

In counts 5 through 8, the jury convicted appellant of four counts of lewd and lascivious acts with a minor under the age of 14 years (§ 288, subd. (a)).

## IV. The Pornography in Count 9.

Doe told the jurors that on more than 10 occasions appellant showed her pornographic videos. She clarified that "porn" is where "people have sex." She said she knew how to touch appellant's penis with her hands because he had shown her videos of people doing that. She recalled an incident where he played pornography on his phone

---

[1] All future statutory references are to the Penal Code unless otherwise noted.

3.

while they were in the shower together. She also recalled that he played pornography on a different occasion while they had sex, but she only heard the pornography on that occasion and did not see the screen.

In count 9, the jury convicted appellant of distributing or showing pornography to a minor (§ 288.2, subd. (a)(2)).

## V.     Appellant was Often Not Home.

During the time appellant lived with Doe and her mother in the Madera house appellant was often not home due to recurring criminal arrests. From 2016 until 2018, he was incarcerated multiple times. Doe's mother told the jury that appellant would be out of custody "for a month or two or three" then he would go back into custody so it "was very sporadic." She also complained that when appellant was out of custody, he would often disappear for multiple days at a time.

In 2018, appellant was arrested, and he was eventually sentenced to prison for first degree burglary. Doe's mother filed for divorce, which was finalized in or about December 2020.

The mother informed the jurors that, even when they were separated, she still loved appellant. She stayed in contact with him while he was in custody until the sexual abuse was finally disclosed to her. At that point, she cut off all contact with him.

The mother confirmed to the jurors that, when appellant was home, he would sometimes watch Doe alone.

## VI.     Doe Confided the Abuse First to Her Stepbrother and Then to Her Mother.

Doe first disclosed the sexual abuse to her stepbrother, who was 12 years old when he testified in this trial. Doe made this disclosure when she was about nine years old. She told him that she knew about sex and "would do it with my mom's ex-husband." She told her stepbrother not to tell anyone.

4.

At trial, the stepbrother corroborated Doe's testimony. She reported to him that she had been "raped" or "fucked" by her stepfather, who had touched her inappropriately in places that she did not like. The stepbrother confirmed that Doe had told him not to tell anyone.

In February 2021, when Doe was nine years old, she disclosed the sexual abuse to her mother. She stated that appellant had touched her vagina, but she denied having sex with him. She told her mother that appellant would shower with her, and he would have her touch him, too.

The next day, February 20, 2021, the mother contacted law enforcement. On or about March 4, 2021, Doe underwent a forensic interview, which law enforcement arranged. The interview was recorded and played for the jury.

## VII. The Forensic Interview.

During the forensic interview in 2021, Doe reported prior sexual incidents with appellant that were consistent with her trial testimony. She said the abuse occurred when she was five or six years old, and in their house in Madera.

Doe stated that appellant repeatedly played pornography for her to view. He forced her to touch his penis, and he touched her "private part" both with his hands and with his private part. On at least two occasions, he put his penis inside her. He also had her orally copulate him.

Consistent with her trial testimony, Doe told the interviewer that, before she disclosed the abuse to her mother, she first told her stepbrother about appellant's actions with her.

During her forensic interview, Doe made some claims that were not repeated at trial. For instance, she claimed that appellant's sexual abuse had happened "every month." She also claimed that the abuse had been going on for six years. She said incidents happened "[m]ostly every day" when she was five, six and seven years old.

5.

On anatomical drawings, Doe circled where appellant had touched her. She indicated her mouth, breasts, "private part" and her buttocks.

## VIII. Appellant's Testimony.

Appellant testified at trial. He admitted to a long list of prior felony convictions for the illegal possession of firearms, the possession for sale and transportation of controlled substances, first-degree burglary, vehicle theft, and evading a police officer. At all relevant times, appellant was on parole, and later on county probation.

During his testimony, appellant never directly addressed any of Doe's allegations against him, neither denying nor confirming the alleged behavior. Instead, appellant claimed to the jury that he was in custody "in and out" the "whole time" he was with Doe's mother. He also claimed that, when he was not in custody, he was "never really a law-abiding citizen" and he would often leave town to avoid problems with parole. He would be gone for a few days or up to 10 days depending on the situation.

In 2017, appellant had four separate violations of probation that resulted in separate periods of confinement in county jail. There was a violation in January, two separate violations in May, and then a final violation in October.

During his trial testimony, appellant admitted that he resided at the Madera home from 2016 until October 2018. He admitted that he would sometimes watch Doe when her mother worked in Fresno, and he would occasionally pick up Doe from school.

## IX. The Prosecution's Rebuttal Evidence.

During rebuttal, a detective testified that she had interviewed appellant about Doe's allegations. During that interview, appellant referred to Doe as his daughter. He said he was Doe's primary caregiver when her mother was at work. He said there were times he would have to pick up the mother from work. Doe would go with him to pick up and drop off the mother.

**X. Appellant's Closing Argument.**

During closing argument, the defense took the position that Doe was lying, and these alleged events never happened. According to the defense, appellant was never home because he was often in custody and, when he was out of custody, he would often disappear. The defense noted that Doe stayed with her biological father during summer breaks.

The defense asked the jurors to discredit Doe's trial testimony because it had inconsistencies. The defense noted that Doe had potential access to pornographic videos through her own cellular phone, which she could have used to learn about sex and the appropriate terminology.[2]

The defense noted that Doe had claimed that the abuse happened once a month, but that was impossible because appellant was never home that much. The defense pointed out the absence of blood ever spotted on Doe's clothes or the furniture in the house.[3] The defense also highlighted that Doe never complained during her forensic interview that the sex had hurt.

The defense contended that, if the jurors looked carefully at the timeline of events, they should find appellant not guilty of all charges.

## DISCUSSION

**I. Substantial Evidence Supports Appellant's Judgment.**

Appellant argues that his judgment should be reversed for insufficiency of the evidence. He claims Doe's testimony was riddled with contradictions, and some of her claims were physically impossible because he was not around her for much of the charged period. According to appellant, no rational jury could have credited her account. These arguments lack merit.

---

[2]     Doe received her first cellular phone in the second grade.

[3]     Doe's mother testified that she did the laundry. She never saw any discharge, and Doe never complained to her about any pain or discomfort.

7.

**A.    *The standard of review*.**

When considering a challenge to the sufficiency of the evidence to support a conviction, we review the record in the light most favorable to the judgment and decide whether it contains substantial evidence from which a reasonable finder of fact could make the necessary finding beyond a reasonable doubt. The evidence must be reasonable, credible and of solid value. We presume every inference in support of the judgment that the finder of fact could reasonably have made. We do not reweigh the evidence or reevaluate witness credibility. We cannot reverse the judgment merely because the evidence could be reconciled with a contrary finding. (*People v. D'Arcy* (2010) 48 Cal.4th 257, 293.)

In child molestation cases, the victim's testimony need not supply precise dates or other particulars. It is sufficient if the child describes the kind of act committed, the number of acts with enough certainty to support the counts alleged, and the general time period showing the conduct fell within the charging allegations. (*People v. Jones* (1990) 51 Cal.3d 294, 316.)

**B.    *The record amply supports the verdicts*.**

Doe described conduct that satisfied the elements of each count alleged against appellant. She testified that appellant had sexual intercourse with her at least twice, she orally copulated him at least twice, and they touched each other for sexual purposes on at least four occasions. She further testified that he showed her pornographic videos. She claimed that these events occurred when she was five or six years old.

Doe's statements before trial and her testimony in court were compelling and consistent regarding appellant's repeated sexual contact with her. Her stepbrother reinforced her claims by confirming she had confided in him that appellant had touched her inappropriately. Doe's testimony by itself was sufficient to convict appellant. (See *People v. Cudjo* (1993) 6 Cal.4th 585, 608–609 [the direct testimony of a single witness is sufficient to support a finding].) Her testimony placed appellant's conduct within the

8.

period alleged in the second amended information and satisfied the elements of each charged count.

The jury was free to reject some portions of Doe's statements—like her claim during the forensic interview that the assaults occurred daily—while also crediting other portions of her testimony. (See *People v. Williams* (1992) 4 Cal.4th 354, 364 [jury may credit some portions of a witness's testimony, and reject others].) Indeed, the jurors were instructed with CALCRIM No. 226 and told that they could believe all, part, or none of any witness's testimony.

At trial, defense counsel urged the jury to reject Doe's account based on the same arguments appellant now presses on appeal: that he was in custody during much of the relevant period, that Doe stayed with her biological father in the summers, and that she was inconsistent regarding the frequency and timing. The jury considered these concerns but nevertheless returned guilty verdicts. We will not reweigh Doe's credibility on appeal. (See *People v. D'Arcy, supra,* 48 Cal.4th at p. 293; *People v. Cudjo, supra,* 6 Cal.4th at p. 609.)

Appellant's contention that the sexual assaults were impossible or inherently improbable is without merit. The mother told the jury, which was corroborated by appellant's own testimony, that appellant was sometimes alone with Doe. Thus, the evidence amply established his opportunity to commit the charged conduct. Although Doe's pretrial statements were sometimes in conflict with her trial testimony, those were issues for the jury to resolve. Testimony is inherently improbable only if it is physically impossible, or its falsity is apparent without resorting to inferences. (*People v. Ennis* (2010) 190 Cal.App.4th 721, 728–729.) The discrepancies here do not meet that standard and, therefore, cannot render Doe's account impossible or inherently improbable.

Based on this record, a reasonable jury could make the necessary findings beyond a reasonable doubt to find appellant guilty in counts one through nine. The jury credited Doe's testimony, and we will not reweigh that determination. The evidence was

9.

reasonable, credible and of solid value. Accordingly, substantial evidence supports appellant's judgment, and this claim is without merit.

**II.    Appellant's Voir Dire Claim Fails from a Failure to Provide an Adequate Record; In Any Event, this Claim Fails on the Merits and Any Presumed Error is Harmless.**

Appellant contends the prosecutor improperly "preconditioned" prospective jurors during voir dire by discussing facts about the case. According to appellant the prosecutor asked potential jurors whether they could convict based on a single witness's testimony. The prosecutor also asked how potential jurors might view a victim's delayed reporting, a victim's emotional demeanor and inconsistent statements, and whether a traumatic story is necessarily credible. Appellant asserts that, before hearing any evidence, the jurors knew that a child would testify to alleged sexual assaults, the child did not report the alleged assaults for years, the child made inconsistent statements, the child may not be emotional while testifying, and no evidence corroborated the testimony. Appellant also maintains that the prosecutor improperly conducted voir dire to exercise peremptory challenges and not to exercise challenges for cause. He argues that the prosecutor simply tried to find and excuse any potential jurors that did not answer these questions in the manner the prosecutor wanted.

We reject appellant's various arguments. As an initial matter, appellant has not provided this court with a copy of the voir dire transcript. As such, this claim must be rejected due to a failure to provide an adequate record. In any event, even when we review the limited record, this claim fails on its merits and any presumed error is harmless.

**A.    *This claim fails due to an inadequate appellate record*.**

Although he claims the prosecutor asked inappropriate questions during voir dire, appellant has not provided this court with the reporter's transcript of the voir dire

10.

proceedings. Instead, he relies on his own selective summary of voir dire taken from a motion he filed in the superior court seeking a new trial.

Appellant bears the burden of furnishing an appellate record adequate for review. Any deficiency in the record is resolved against him. (See *People v. Prince* (2007) 40 Cal.4th 1179, 1284; *People v. Siegenthaler* (1972) 7 Cal.3d 465, 469 [absence of preliminary hearing transcript from appellate record precluded review of denial of § 995 motion]; *People v. Moore* (2021) 68 Cal.App.5th 856, 866 [defendant bears burden to provide appellate record which affirmatively shows error]; *People v. Chubbuck* (2019) 43 Cal.App.5th 1, 13 [appellate claim deemed forfeited from inadequate record].)

The absence of the voir dire transcript makes meaningful review of this claim impossible. Without the transcript, we cannot verify the precise wording of the prosecutor's questions or determine whether appellant's characterization of them is accurate or complete. Nor can we assess the context in which the questions were posed, whether they were isolated or part of a broader pattern of permissible inquiry. We cannot evaluate the responses of prospective jurors, whether any expressed bias, or whether they were excused for cause or by peremptory strike.

Moreover, the missing transcript would reveal what objections defense counsel raised contemporaneously, how the court addressed them, and whether other questioning by the court or defense counsel clarified or counterbalanced the prosecutor's inquiries. We do not have a complete showing of the trial court's rulings or interventions, including whether any objections were sustained, overruled, or followed by curative instructions.

Finally, because we lack any account of which jurors were ultimately seated, we cannot determine whether the challenged questions had any effect on the composition of the jury. In short, the missing transcript prevents us from assessing either error or prejudice. Consequently, based on the failure to provide an adequate record, we reject this claim.

**B.** *The limited record shows that the prosecutor's questions were proper.*

Even if we review the merits of this claim, it nevertheless fails on the limited record before us.[4]

A trial court has broad discretion to permit liberal and probing examination during voir dire to uncover bias or prejudice. (Code Civ. Proc., § 223, subd. (b)(1); *People v. Contreras* (2013) 58 Cal.4th 123, 143.) Voir dire questions are improper only if their "dominant purpose" is to indoctrinate the jury to a particular result. (Code Civ. Proc., § 223, subd. (b)(3); *People v. Carter* (2005) 36 Cal.4th 1114, 1178.)

Here, our understanding of the prosecutor's disputed questions is summarized in a motion for new trial that was filed in the superior court. The prosecutor's questions presented to us do not run afoul of the applicable statute.

It is apparent that these questions sought to identify jurors who might (1) demand corroboration despite the law that a single witness's testimony may suffice; (2) unfairly discredit a child for delayed reporting; (3) impose rigid expectations about emotional demeanor or inconsistencies; or (4) automatically credit trauma narratives. Each inquiry reasonably probed for potential bias rather than preconditioning jurors to convict. The questions did not describe the specific facts of this case, argue how any witness should be believed, or seek commitments on how jurors should vote. Rather, they asked only about general attitudes that might reveal bias. Because the questions were aimed at uncovering bias rather than preconditioning the jurors to a verdict, they do not violate the applicable statute. (See Code Civ. Proc., § 223, subds. (b)(1) & (3).)

Likewise, we reject appellant's contention that the prosecutor improperly used void dire to exercise peremptory challenges rather than challenges for cause. (See Code

---

[4] Respondent alternatively urges us to find forfeiture due to appellant's alleged failure to object sufficiently during voir dire to preserve these issues for appeal. We need not resolve whether or not appellant preserved this claim by objecting adequately below. This claim fails due to an inadequate record, and, in any event, it also fails on the merits based on the limited record before us.

12.

Civ. Proc., § 223, subd. (d) ["Examination of prospective jurors shall be conducted only in aid of the exercise of challenges for cause"].)  Contrary to appellant's assertion, it appears that the prosecutor probed for potential bias in the potential jurors, which was permitted.  The prosecutor's questions could support a challenge for cause, and nothing in appellant's summary of those questions suggests the prosecutor exceeded the permissible scope of voir dire.  This concern is meritless

### C.     *Any presumed error is harmless*.

Even assuming some of the prosecutor's voir dire questions exceeded proper bounds, reversal is unwarranted.  Voir dire error requires reversal only if it results in a "miscarriage of justice" under the standard articulated in *People v. Watson* (1956) 46 Cal.2d 818.  (See Code Civ. Proc., § 223, subd. (g).)  We ask whether it is reasonably probable appellant would have received a more favorable result absent the alleged errors. (*Watson,* at p. 836.)

Appellant contends the prosecutor's questions biased the jury before any evidence was heard.  He asserts that this effectively eliminated his strongest defense—that Doe was not credible.  Appellant argues the jury disregarded Doe's inconsistencies between her pretrial statements and her trial testimony—such as when, where and/or how the sexual acts occurred.  He claims these inconsistencies show he was prejudiced.

These arguments are unpersuasive.  Appellant does not identify a single juror who expressed bias, refused to follow the court's instructions, or was seated despite cause for disqualification.  His claims rests entirely on speculation that the panel, as a whole, was "preconditioned" to convict.  That speculation cannot establish prejudice because the defense was not precluded from challenging credibility.  Defense counsel cross-examined Doe and urged the jury to disregard her claims.

With CALCRIM Nos. 200 and 222, the jury was properly instructed to follow the law as explained by the court, and that attorney questions and statements are not

evidence. With CALCRIM No. 301, the jurors were properly informed that a single witness's testimony can be sufficient to convict if believed beyond a reasonable doubt. With CALCRIM Nos. 226 and 302, the jury was properly instructed that it alone must evaluate witness credibility, including inconsistencies and demeanor. We presume the jurors followed these instructions, which directly counter appellant's speculative assertion that voir dire eliminated appellant's credibility defense. (See *People v. Sanchez* (2001) 26 Cal.4th 834, 852 [jury presumed to follow instructions].)

The trial evidence further undermines any claim of prejudice. The testimony against appellant was strong and compelling. While Doe made inconsistent statements, she consistently described multiple sexual acts committed by appellant. Her account was corroborated by appellant's own trial admission that he was alone with her on multiple occasions. Her account was further corroborated by her stepbrother, who confirmed that she confided in him about the abuse before law enforcement became involved.

Finally, appellant's assertion of prejudice is also undermined by the state of the record. Without the voir dire transcript, we cannot evaluate how many prospective jurors were questioned, how they responded, or whether any were seated despite apparent or actual bias. In the absence of such a record, we must presume no miscarriage of justice occurred. (See Code Civ. Proc., § 223, subd. (g); *People v. Chubbuck*, *supra*, 43 Cal.App.5th at p. 13 [defendant bears burden to affirmatively show error and, absent an adequate record, we presume the judgment is correct].)

Based on this record, there is no reasonable probability the outcome would have been different in the absence of the alleged errors. Appellant has not demonstrated either a miscarriage of justice or prejudice under *Watson*. Accordingly, any possible error in the conduct of voir dire was harmless, and this claim lacks any merit.

14.

**III.    Appellant Does Not Establish Ineffective Assistance of Counsel.**

During trial, Doe's mother testified that she was shocked and in disbelief when Doe disclosed the abuse to her.  Without prompting, she stated, "Children don't lie about these things."  Defense counsel did not object to this last statement.

In the present claim, appellant argues that the mother gave an inadmissible opinion regarding credibility.  He contends that a competent attorney would have objected.  He further asserts that the remark prejudiced him because credibility was the central issue in this case.

We reject appellant's position.  He does not demonstrate ineffective assistance of counsel.

### A.    *The governing law*.

To establish ineffective assistance, appellant must show both that his counsel's performance was objectively unreasonable and that a reasonable probability exists of a more favorable outcome absent the error.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688; *People v. Mai* (2013) 57 Cal.4th 986, 1009.)  When the record is silent as to counsel's reasoning, such claims ordinarily fail on direct appeal unless there could be no satisfactory tactical explanation for counsel's alleged error.  (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.)  For this reason, ineffective assistance claims are more appropriately raised by habeas corpus, where evidence outside the record, such as a declaration from trial counsel, can be provided.  (*Ibid.*)

### B.    *This record discloses a possible tactical basis for a failure to object*.

The failure to object at trial rarely establishes ineffective assistance of counsel. (*People v. Riel* (2000) 22 Cal.4th 1153, 1197.)

Here, the mother's comment was unsolicited, isolated, and not repeated.  Defense counsel could reasonably have concluded that objecting would draw needless attention to it.  Thus, the record itself suggests a plausible tactical choice.  Accordingly, this claim

15.

must fail on direct appeal. (See *People v. Mendoza Tello, supra,* 15 Cal.4th at pp. 266–267.)

### C. *Appellant does not demonstrate prejudice.*

Even if we assume a reasonable attorney would have objected, appellant fails to show prejudice. The jury was instructed that it alone must assess credibility. The defense cross-examined Doe, and, during closing argument, her inconsistent statements were highlighted. The issue of credibility remained a contested issue. Nothing in the record suggests the jury disregarded the court's instruction or placed any weight on the mother's fleeting remark.

Moreover, the prosecution's evidence against appellant was substantial. Doe testified in detail about repeated sexual acts. While inconsistencies exist, her pretrial statements and trial testimony were consistent regarding a pattern of ongoing abuse. Her account was corroborated by surrounding circumstances—most notably her opportunity to be alone with appellant—and by her stepbrother's corroboration that she disclosed the abuse to him before law enforcement became involved. Doe's testimony was credible and compelling.

Based on this record, it is not reasonably probable the verdicts would have been different had counsel objected to the mother's isolated remark. Appellant neither shows that his trial attorney acted in an objectively unreasonable way nor that he suffered prejudice. Accordingly, appellant fails to demonstrate ineffective assistance of counsel and this claim lacks merit.

## IV. The Trial Court Did Not Abuse Its Sentencing Discretion.

Appellant received the maximum possible sentence. Consecutive life sentences were imposed for the sexual penetration and oral copulation convictions (counts 1–4), which resulted in an aggregate indeterminate term of 80 years to life. For the lewd

16.

conduct in count 5, the court imposed an upper term, and all remaining convictions were imposed as consecutive subordinate determinate terms.

Appellant argues that the trial court erred or abused its sentencing discretion by imposing consecutive sentences. He contends that at least one conviction for oral copulation (§ 288.7, subd. (b)) should run concurrently with a conviction for sexual intercourse (*id*., at subd. (a)) because, during her forensic interview, Doe described a single incident where both acts occurred. He further maintains the court improperly relied on aggravating factors to justify the imposition of consecutive sentences.

### A. *Background facts*.

A bifurcated bench trial occurred wherein the court found true four factors in aggravation: (1) Doe was particularly vulnerable; (2) appellant took advantage of a position of trust and confidence; (3) appellant's prior convictions are numerous and/or increasing in seriousness; and (4) appellant served a prior prison term.

At sentencing, the defense argued that the crimes were not predominantly independent of each other, and concurrent sentences were requested. The court disagreed. The court expressly found that these crimes were independent of each other; the crimes involved separate acts of violence or threats of violence; and the crimes were committed at different times or separate places rather than being committed closely in time and place as to indicate a single period of abhorrent behavior. The court noted its belief it could consider the factors in aggravation in deciding whether to impose consecutive sentences.

### B. *The standard of review*.

We review for abuse of discretion a trial court's decision to impose consecutive rather than concurrent sentences.[5] (*People v. Bradford* (1976) 17 Cal.3d 8, 20.)

---

[5]    Citing *People v. Waidla* (2000) 22 Cal.4th 690, appellant contends that the trial court's sentencing choices are reviewed de novo. We disagree. In *Waidla*, the California Supreme Court held that a de novo standard of review is applied to a ruling on a motion

Consecutive terms may be imposed when crimes are independent of one another, involve separate acts of violence, or occur at different times or in separate places. (Cal. Rules of Court, rule 4.425(a).) The court may also consider aggravating factors, except where they are elements of the crime or have already been used to impose an upper term. (*Id.,* at subd. (b).) Only one valid factor is necessary to support consecutive sentences. (*People v. Osband* (1996) 13 Cal.4th 622, 728–729.)

**C.     *Our analysis*.**

This record fully supports the trial court's sentencing decisions. Although Doe's pretrial forensic interview described one occasion of intercourse followed by oral copulation, her trial testimony established that appellant committed multiple separate acts of intercourse and oral copulation on different occasions. She recounted incidents where she awoke to find appellant penetrating her, another episode of intercourse on a couch, and incidents of oral copulation both in her shower and on her mother's bed.

Contrary to appellant's assertion, the trial court was not required to accept Doe's inconsistent pretrial statements but could instead rely on her trial testimony in imposing consecutive sentences. We will not reweigh the court's determination. (See *People v. Bradford, supra,* 17 Cal.3d at p. 20.) Doe's trial testimony amply supports the findings that the convictions for sexual intercourse and oral copulation were based on distinct criminal episodes committed at different times and places. The evidence demonstrates that appellant's crimes and objectives were predominantly independent of each other. The court's findings more than justify the imposition of consecutive sentences. (See Cal. Rules of Court, rule 4.425(a).)

---

to suppress a statement, the failure to instruct on a lesser included offense, an order excluding the defendant from the trial, and a ruling on an application to modify the verdict. (*Id.* at pp. 730, 733, 741, 748.) *Waidla* does not establish a de novo review of sentencing choices.

Appellant also points to the court's comment that it believed it could consider the aggravating factors when considering whether to impose consecutive sentences. While the court made such a remark, the transcript makes it abundantly clear the court imposed consecutive sentences based on the separate nature of the offenses. Indeed, the court expressly adopted the findings from the probation report that appellant's crimes were independent of each other, involved separate acts of violence, and occurred at different times or separate places. Thus, appellant's concern is without merit because the court's imposition of consecutive sentences rested on the distinct and independent nature of the offenses, not on any improper reliance on aggravating factors.

On this record, the trial court's decision to impose consecutive sentences did not exceed the bounds of reason, nor was it arbitrary or capricious. The court identified valid sentencing factors, and substantial evidence supports those findings. Consequently, an abuse of discretion has not been shown, and this claim fails.[6]

## DISPOSITION

The judgment is affirmed.

LEVY, Acting P. J.

WE CONCUR:

PEÑA, J.

MEEHAN, J.

---

[6]    Because this claim fails on its merits, we need not resolve the parties' dispute regarding whether or not appellant failed to preserve this claim for appellate review.